W. James Young, Esq.
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510

Steven R. Burlingham, Esq.
California Bar No. 88544
Gary, Till & Burlingham
5330 Madison Avenue, Suite F
Sacramento, California 95841
(916) 332-8122
Facsimile — (916) 332-8153

Attorneys for Plaintiffs and
the Class They Seek to Represent

United States District Court
for the Eastern District of California

| | |
|---|---|
| Kourosh Kenneth Hamidi; Kim McElroy; Dawn P. Ammons; William L. Blaylock; Christopher Browne; Ryan Christensen; Kelli Giles; Sandra Kieffer; Angel Lo; Madeline L. Lopez; Clint Miller; Gary W. Morrish; Virginia Ollis; Olayemi Sarumi; Cecilia Stanfield; Antonia Toledo; Diane C. Tutt; and Mozelle Yarbrough; and the Class They Seek to Represent<br><br>     Plaintiffs,<br><br>v.<br><br>Service Employees International Union Local 1000, and John Chiang, Controller, State of California;<br><br>     Defendants. | Case No. _____<br><br>**Class Action**<br><br>**Plaintiffs' Verified Class Action Complaint** |

**Complaint**

1.   This is a civil rights, class action pursuant to 42 U.S.C. § 1983 seeking immediate injunctive and declaratory relief, and nominal and compensatory damages and/or restitution, to redress and prevent the deprivation, through action by Defendants acting under color of state law — specifically, the Ralph C. Dills Act, Cal. Govt. Code § 3512 *et seq.*, and various memoranda of

understanding ("MOUs") between the State and a labor union — of Plaintiff public employees' rights, privileges, and immunities against compelled speech and compelled association under the First and Fourteenth Amendments to the United States Constitution.

Specifically, this case challenges a prior restraint on political speech. Pursuant to forced-unionism clauses authorized by the Ralph C. Dills Act and contained in the MOUs between the State of California and Defendant Service Employees International Union, Local 1000 ("Local 1000"), public employees are required to join Local 1000 or have seized from their wages union fees as a condition of their public employment. The union fees seized from the wages of these public employees include a substantial political, ideological, and other nonbargaining component, *e.g.*, expenses for candidate endorsements. Employees' First Amendment rights of speech and association free them from having to pay the political and other nonbargaining component of union fees. However, the State and Local 1000 have structured employee choice on union fee payments in such a way as to make it more difficult for employees to retain their political autonomy than it is for employees to forfeit their money to Local 1000 for its political purposes. They do this by setting the "default" as public employees' support for union political, ideological, and other nonbargaining activities, as opposed to their not wanting to support such activities.

Under traditional First Amendment analysis, the State may not create a prior restraint on political speech and association by imposing barriers to political and associational autonomy, or by imposing procedures that exceed those supported by a compelling state interest, imposed in a way least restrictive on First Amendment rights. The State's only legitimate interest in the choice architecture (or "default setting") for union fee decisions is to minimize the burden on employee political and associational autonomy. It has no legitimate interest in skewing employees' "choice," or pressuring them, to cause them to forfeit their political and associational autonomy. In this case, the State and Local 1000 have violated First Amendment principles by creating a choice architecture "default" which makes it difficult for employees to retain their political and associational autonomy, but easy to forfeit that political and associational autonomy to the union. **See** *Knox v. Service Employees International Union, Local 1000*, 132 S. Ct 2277 (2012); *Teachers Local No. 1 v. Hudson*, 475 U.S. 292 (1986).

## JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States, particularly the First, Fifth, and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court, therefore, is invoked under 28 U.S.C. § 1331.

3. This is also an action under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiffs and class members by the Constitution of the United States, particularly the First, Fifth, and Fourteenth Amendments thereto. The jurisdiction of this Court, therefore, is invoked under 28 U.S.C. § 1343(a)(3) & (4), pursuant to which this Court may grant: a) damages or restitution for the violation of Plaintiffs' First and Fourteenth Amendment rights in the amount of the non-bargaining component of union fees unconstitutionally collected and used, plus interest, and/or the costs incurred in attempting to avoid the seizure of fees exceeding the bargaining component of union fees; b) injunctive relief against the future collection or spending of the non-bargaining component of union fees; c) nominal damages for the violation of Plaintiffs' federally protected rights; and d) reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

4. This is also a case of actual controversy where Plaintiffs are seeking a declaration of their rights under the Constitution of the United States. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiffs and grant further necessary and proper relief based thereon, including preliminary and permanent injunctive relief, pursuant to Rule 65, FED.R.CIV.P.

5. **Venue:** Pursuant to 28 U.S.C. § 1391(b) and § 1392, venue is proper in this Court because Defendants either reside and/or have offices and conduct their business in the judicial district of the United States District Court for the Eastern District of California.

## PARTIES

6. Plaintiffs Kourosh Kenneth Hamidi, Kim McElroy, Dawn P. Ammons, William L. Blaylock, Christopher Brown, Ryan Christensen, Kelli Giles, Sandra Kieffer, Angel Lo, Madeline L. Lopez, Clint Miller, Gary W. Morrish, Virginia Ollis, Olayemi Sarumi, Cecilia Stanfield, Antonia Toledo, Diane C. Tutt, and Mozelle Yarbrough are, and were at all times mentioned herein, individuals

employed by various instrumentalities of the State of California. As such, they are "state employees" within the meaning of the Ralph C. Dills Act, CAL. GOVT. CODE, § 3513(c). Plaintiffs are employed in various bargaining units which are among several represented, exclusively for purposes of collective bargaining with their employer, by Defendant Service Employees International Union, Local 1000 (hereinafter "Local 1000" or "the union"). Plaintiffs are not members of Local 1000 and have not, at any time material hereto, been members of Local 1000 and/or its affiliates, and nevertheless have been and are subject to the automatic seizure of full union dues or, only upon their objections, the union-calculated "agency fee."

7. Defendant John Chiang (hereinafter "Chiang") is the Controller of the State of California. As such, he is charged with the responsibility of issuing wages to employees of the State and/or its Departments, including Plaintiffs, and processing all deductions therefore, including for union dues and so-called "fair share" fees pursuant to "agency shop" agreements. He is sued in his official capacity.

8. Defendant Service Employees International Union, Local 1000 ("Local 1000" or "the union") is an "employee organization" as defined in the Ralph C. Dills Act, CAL. GOVT. CODE, § 3513(a), and has been recognized as the exclusive representative under said law for collective bargaining purposes of all State employees in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21. On information and belief, Defendant Local 1000 is a nonprofit corporation formed and existing under the laws of the State of California. Local 1000 is headquartered in the Eastern District of California, and conducts its business and operations throughout the State of California, and also within the Eastern District of California.

## CLASS ACTION ALLEGATIONS

9. Plaintiffs' action is a class action brought by Plaintiffs on their own behalf and on behalf of others similarly situated, pursuant to Rule 23(b)(1)(A) and (b)(2) and, alternatively, Rule 23(b)(3), FED.R.CIV.P. The class that Plaintiffs seek to represent consists of all former, current, and future State of California employees employed in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21 who are, have been, or will be represented exclusively for purposes of collective bargaining by Local

1000, in three subclasses:

    a.    All individuals who pay compulsory fees to Local 1000 who are not members and who have, at one time or another, specifically objected to the use of their union fees for politics or other nonbargaining activities;

    b.    All individuals who pay compulsory fees to Local 1000 who are not members and who have never specifically objected to the use of their union fees for politics or other nonbargaining activities; and

    c.    All individuals who pay compulsory fees to Local 1000 who are not members and who have specifically objected to the use of their union fees for politics or other nonbargaining activities and for whom Local 1000 has, for whatever reason, refused to honor their objections.

10. Upon information and belief, the number of persons in this class is believed to number in the tens of thousands. These persons are therefore so numerous that joinder of all members of the class and each subclass obviously is impractical.

11. There are questions of law and fact common to all members of the class, to-wit, whether Defendants may constitutionally and lawfully seize from the wages of the state employees who are not union members amounts in excess of those necessary to satisfy the compelling governmental interest which justifies forced-unionism provisions, *i.e.*, those which are to be used for ballot propositions, political activities, and other nonbargaining activities.

12. Plaintiffs' claims are typical of other members of the class and each subclass, who are subject to the same deprivations of their rights by Local 1000's requirement that they object and/or annually renew their objections to paying fees in excess of those necessary to satisfy the compelling governmental interest which justifies forced-unionism provisions, *i.e.*, those which are to be used for ballot propositions, political activities, and other nonbargaining activities, as hereinafter alleged.

13. Plaintiffs can adequately represent the interests of other members of the class and each subclass. Plaintiffs have no interests antagonistic to other members of the class and subclasses related to the subject matter of this lawsuit, since all members of the class and each subclass are "potential objectors" as that term was used by the United States Supreme Court in *Hudson*, 475 U.S. at 306, and

are entitled to notice and the procedures and safeguards required by the Constitution.

14. Plaintiffs' attorneys are experienced in representing litigants before this Court. Plaintiffs' counsel is provided *pro bono publico* by a national charitable legal aid organization, and their lead counsel is experienced in representing nonunion employees in litigation, including class actions, involving issues identical or similar to those raised in this action, and in fact, has litigated the most recent leading cases addressing these issues in this Circuit and before the United States Supreme Court. Plaintiffs' attorneys are well qualified to be appointed class counsel by the Court.

15. Because Local 1000's duty not to invade the First Amendment rights of the public employees applies equally to all in the class and each subclass, the prosecution of separate actions by individual class member public employees would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.

16. Defendants have acted and threaten to continue to act on grounds generally applicable to all members of the class and each subclass, thereby making appropriate final declaratory, injunctive and other relief with regard to the class, and each subclass as a whole.

17. The questions of law and fact common to the members of the class and each subclass predominate over questions affecting only individual employees, in that the important and controlling questions of law and fact are common to all State employees in the class and subclasses, *i.e.*, whether Defendants may extract from nonmembers agency fees in excess of those necessary to satisfy the compelling governmental interest which justifies forced-unionism provisions, *i.e.*, those which are to be used for ballot propositions, political activities, and other nonbargaining activities.

18. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, inasmuch as the individual class member employees are deprived of the same rights by Defendants' actions and threatened actions. The limited amount of money involved in the case of each employee's claim would make it burdensome for the class, or each subclass, of employees to maintain separate actions.

# FACTS

19. Acting in concert under color of state law — to-wit, the Ralph C. Dills Act, CAL. GOVT. CODE § 3512 *et seq.* — the State of California has recognized Local 1000 as the exclusive bargaining agent for the Plaintiffs and other State employees in bargaining units designated as Bargaining Units 1 (Professional, Administrative, Financial and Staff Services bargaining unit), 3 (Professional Educators and Library bargaining unit), 4 (Office and Allied Workers bargaining unit), 11 (Engineering and Scientific Technicians bargaining unit), 14 (Printing Trades bargaining unit), 15 (Allied Services Workers bargaining unit), 17 (Registered Nurses bargaining unit), 20 (Medical and Social Services Specialists bargaining unit), and 21 (Educational Consultants and Librarians bargaining unit). Local 1000 and the State of California have entered into a series of Memoranda of Understanding ("MOUs") controlling the terms and conditions of employment for Plaintiffs and the class and subclasses of State employees Plaintiffs seek to represent.

20. Pursuant to the Ralph C. Dills Act, CAL. GOVT. CODE § 3512, the State and Local 1000 have entered into MOUs governing these bargaining units, including a provision requiring that all State employees in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21 join Local 1000 as formal union members, or have deducted from their wages full union dues or agency fees, as a condition of continued public employment.

21. Sometime in June 2013, Defendant Local 1000 sent to each Plaintiff and class member a notice by regular, first-class mail, informing nonmember employees of their "right to object to the use of any portion of your fees for what you believe are activities not germane to the collective bargaining functions of SEIU Local 1000, i.e., partisan political or ideological causes only incidentally related to the terms and conditions of employment or the provision of benefits available only to members." A true and correct copy of the notice sent to each Plaintiff and class member is attached hereto and incorporated herein as Exhibit A.

22. Not all Plaintiffs and class members — such as Plaintiffs Dawn Ammons, Ryan Christensen, Kelli Giles, Madeline L. Lopez, Clint Miller, Virginia Ollis, and Antonia Toledo — actually received such notices.

23. Other Plaintiffs and class members— such as Plaintiff Diane C. Tutt — have in prior

years had notices mailed to stale addresses and had such notice forwarded to them after the period for objections had passed. For example, for the year ended 30 June 2013, Plaintiff Tutt received her notice after Local 1000's deadline for objection had passed, and hence, failed to object for the year ended 30 June 2013, and was subject to fee seizures for admittedly chargeable political and other non-bargaining expenditures.

24. As public employees, Plaintiffs and class members are free to become or remain members or nonmembers of a labor organization designated by the State as their monopoly bargaining representative, and to chose to support or not support the union's political and other non-bargaining activities. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).

25. Plaintiffs and class members are entitled to receive constitutionally-adequate procedural safeguards to protect their constitutional rights **prior to** the demand for and/or collection of any fees from them. *Teachers Local No. 1 v. Hudson*, 475 U.S. 292, 306 (1986).

26. The notice Defendant Local 1000 sent to Plaintiffs and class members, Exhibit A hereto, and State law together create a choice architecture that is designed to make it much more difficult for employees who have already rejected union membership to also retain their political and associational autonomy than it is to forfeit their political and associational autonomy to Local 1000. The procedure and statute do this, in part, by setting the nonmembers "default" position as supporting union political and other non-bargaining activities. More specifically, Local 1000's notice and the statute propel employee choice towards forfeiture of their political and associational rights in the following ways:

 a. Although the employee is not a union member, the political and other non-bargaining component of the union fees — minus a reduction of 0.5% of full union dues "designed to ensure ... that fee payers do not pay for the costs of providing benefits such as death benefits, group insurance plans and entertainment discount opportunities available only to SEIU Local 1000 members" — is automatically collected from the employee's pay unless the employee affirmatively objects;

 b. Local 1000's notice provides seventeen (17) pages of information, and the employee must read through at least the first three paragraphs to learn that Local 1000 actually

has been and/or will be collecting money that belongs to the employee. The first page contains Local 1000's argument for joining the union and a skewed description of the law. The employee must read through to the top of the third page — with print half the size of the union's membership pitch — to find a grudging explanation of how to protect his or her political and associational autonomy and retrieve his or her political and other non-bargaining money;

   c.   To get this money back, the employee must individually create a written statement, which must include five pieces of information, one of which (the Social Security number) exposes the employee to identity theft, and then mail that information at the employee's expense to a specific person at an address which appears to change at random from year to year, and if mailed to an address from a prior year, is not accepted/honored, by an arbitrary deadline;

   d.   Local 1000 does not allow employees to simply sign a shared form or permit a group mailing to make avoidance of subsidizing Local 1000's political, ideological, and other non-bargaining activities less expensive, onerous, and time consuming. No less expensive or time-consuming means of avoidance — such as faxed or e-mailed objections — is permitted, and such objections are specifically and emphatically barred. Instead, Local 1000 "request[s], but not require[s]," that employees utilize an even more expensive and time-consuming method of avoidance, certified mail, "in order to have proof that their objections were timely made and received by SEIU LOCAL 1000," and Local 1000 frequently denies having received objections which have been sent merely by regular mail, or which have been sent to a prior address;

   e.   Local 1000's notice employs boldface and underlining to highlight Local 1000's bar on the less expensive and time-consuming method of objection *via* facsimile and e-mail. In contrast, it provides no typographical emphasis to that part of the notice indicating that 44.7% of full union dues is spent for political and other non-chargeable expenses, and therefore belongs to the employee.

   f.   Local 1000's notice informs the employee that if s/he chooses to protect his or her political autonomy, at his or her own expense, s/he will forfeit the right to a voice and a

vote on contract negotiations and other union business;

      g.    This process for objecting must be performed each year within a specific, limited period;

      h.    On the other hand, if the employee desires to give to Local 1000 the political and non-bargaining portion of the agency fee, s/he is not required to do anything; and,

      i.    Furthermore, if the employee desires to join Local 1000, the union provides a single-page, easy-to-complete form, along with a postage-paid envelope, by which the union subsidizes the choice to become a union member. There is no deadline for filing this form. Once the employee joins Local 1000, the matter is final. The employee is not required affirmatively to join or re-join Local 1000 each year.

27.    Not only did the State and the union fail to create a constitutionally-adequate choice architecture, they failed to provide adequate procedural safeguards constitutionally required under the United States Supreme Court's decision in *Hudson, supra*, including but not limited to the following:

      a.    Local 1000 failed to provide adequate notice or explanation of the amount of the fee, or total union expenditures allocated into understandable, useful chargeable and non-chargeable categories, verified by an independent auditor;

      b.    Local 1000 failed to provide adequate financial information about the chargeable and nonchargeable expenses of its many affiliates; and

      c.    Local 1000's objection procedure is overly cumbersome and therefore is unlawful and constitutionally inadequate, including, but not limited to, its requirement that employees disclose their Social Security numbers as a condition of objecting.

28.    Local 1000's collection, under color of state law, of agency fees in the absence of constitutionally-adequate notice and procedural safeguards, including proper choice architecture, violates Plaintiffs' rights, privileges, and immunities guaranteed by the First, Fifth, and Fourteenth Amendments to the United States Constitution, and thus violates 42 U.S.C. § 1983.

29.    Notwithstanding the fact that each Plaintiff and class member was and remains a nonmember of Local 1000, on or about 1 July 2013, Defendant Chiang commenced automatic

deductions of:

    a. from Plaintiffs and class members who had previously objected to the seizure of full union dues from their wages, but failed to renew their objections, for whatever reason (such as the failure actually to receive and respond to such notice, as with Plaintiffs Ammons, Lopez, Miller, Ollis, and Toledo, and, upon information and belief, other absent class members), agency fees equal to 99.5% of full union dues from each Plaintiff's and class member's wages, and has forwarded such deductions to Local 1000;

    b. from Plaintiffs and class members who objected to the seizure of 99.5% of full union dues from their wages, but who transmitted their objections to Local 1000 absent strict compliance with Local 1000's onerous requirements, set forth in ¶ 26, *supra*, agency fees equal to 99.5% of full union dues from each Plaintiffs' wages, and has forwarded such deductions to Local 1000;

    c. from Plaintiffs and class members who objected to the seizure of 99.5% of full union dues from their wages, but who transmitted their objections to Local 1000 *via* regular mail, and not *via* the "requested, but not required"— and much more expensive — method of certified mail, and whose objections were lost in the mail, and/or were simply ignored, agency fees equal to 99.5% of full union dues from each Plaintiffs' wages, and has forwarded such deductions to Local 1000;

    d. from Plaintiffs and class members who objected to the seizure of 99.5% of full union dues from their wages, but who transmitted their objections to Local 1000 *via* facsimile or e-mail, and not *via* regular mail or the "requested, but not required"— and much more expensive — method of certified mail, and whose objections were simply ignored, such as agency fees equal to 99.5% of union dues from each Plaintiffs' wages, and has forwarded such deductions to Local 1000; and and

    e. from Plaintiffs and class members who objected to the seizure of 99.5% of full union dues from their wages, such as Plaintiffs Hamidi, Blaylock, Brown, Christensen, Giles, Kieffer, Knox, Lo, Lopez, McElroy, Miller, Morrish, Ollis, Sarumi, Stanfield, Toledo, Tutt,

and Yarbrough, and, upon information and belief, other absent class members, agency fees equal to 55.3% of full union dues from each Plaintiffs' wages, and has forwarded such deductions to Local 1000.

30. Said seizures of agency fees from Plaintiffs' and class members' wages, and Local 1000's acceptance of those fees from Defendant Chiang, occurred without the appropriate safeguards and procedural protections that are necessary for the constitutional seizure of fees, to-wit: the seizure of agency fees from Plaintiffs' wages, as described above in ¶ 29, occurred without the required adequate advance reduction of the fee to reflect fully that portion expended on nonchargeable activities.  Specifically, listing among the "chargeable expenses" for the year ended 31 December 2012, in Local 1000's allocation of fees, Exhibit A at 6, were $75,185 in expenses incurred by Local 1000 for "Fair-share fee litigation and arbitration" which, upon information and belief, includes expenditures for Local 1000's expenditures in unsuccessfully defending against the meritorious constitutional claims raised by the plaintiffs and class members in *Knox v. Service Employees International Union, Local 1000*, Case No. 2:05-cv-02198 MCE KJM, and reported at 132 S.Ct. 2277 (2012).  The treatment of such expenditures as "chargeable" to nonmembers therefore unconstitutionally compels Plaintiffs and class members, particularly those such as Plaintiff William L. Blaylock, to subsidize Local 1000's defense against their own meritorious constitutional claims against it.

**V. CLAIM FOR RELIEF**
(Violation of 42 U.S.C. § 1983 and
the Constitution of the United States)

Plaintiffs reassert the foregoing and further allege:

31. There is no rational basis — let alone a compelling state interest — justifying the government's and/or union's requirement that individuals pay agency fees equal or nearly equal to full union dues, *i.e.*, for amounts subsidizing the union's political and other non-bargaining activities, absent their affirmative consent.  This improper choice architecture (a self-servingly skewed "default

setting") is a prior restraint on the Plaintiffs' and class members' First Amendment speech and associational rights, and is not the least restrictive alternative for achieving the State's legitimate interests.

32. The prior restraint on the Plaintiffs' and class members' First Amendment rights is compounded by the other features of Local 1000's objection procedure and notice that fail to meet *Hudson*'s requirements and/or make it difficult for employees to object and retain their political and associational autonomy.

33. If not enjoined, Defendants and their agents will continue to violate Plaintiffs' (and other nonmembers') constitutional rights, thereby causing irreparable harm and injury to Plaintiffs for which there is no adequate remedy at law.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.  **Declaratory**: A judgment based upon the controversy between the parties as to the legal relations among them, pursuant to 28 U.S.C. § 2201 and Rule 57, FED.R.CIV.P., declaring that the forced-unionism clauses contained in the MOUs between the State and Defendant Local 1000, on their faces and as applied, and the purported *Hudson* notice and procedure, Exhibit A, violates the First, Fifth, and Fourteenth Amendments to the Constitution of the United States Constitution due to the failure to provide adequate information and a proper choice architecture protecting employee political and associational autonomy;

B.  **Injunctive**: A permanent injunction enjoining Defendants, their officers, employees, agents, attorneys, and all other persons in active concert with them, from:

    1.  engaging in any of the activities which the Court declares illegal;

    2.  enforcing the forced-unionism clauses contained in the MOUs between the State

and Defendant Local 1000;

      3.    requiring Plaintiffs to pay for the political, ideological, and other nonbargaining activities of Local 1000 and/or its affiliates absent their affirmative consent after receiving adequate notice and procedures including, but not limited to, amounts for nonchargeable activities such as the union's expenditures in unsuccessfully defending against the meritorious constitutional claims raised by the plaintiffs and class members in *Knox v. Service Employees International Union, Local 1000*, Case No. 2:05-cv-02198 MCE KJM, and reported at 132 S.Ct. 2277 (2012). Such notice and procedures must include a proper choice architecture so that employees' default position is not set to automatically support union political and other non-bargaining activities.

C.    **Monetary**: A judgment awarding Plaintiffs compensatory damages for the injuries sustained as a result of Defendants' unlawful interference with and deprivation of their constitutional and civil rights including, but not limited to, the amount of agency fees improperly deducted from their wages, nominal damages, and such other amounts as principles of justice and compensation warrant.

D.    **Attorneys' Fees and Costs**: A judgment awarding Plaintiffs their costs, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

////

////

////

////

////

////

////

////

////

E.     **Other**: Such other and further relief as the Court may deem just and proper.

DATED: 31 January 2014

Respectfully submitted,

/s/ Steven R. Burlingham

STEVEN R. BURLINGHAM, Esq.
California Bar No. 88544
Gary, Till & Burlingham
5330 Madison Avenue, Suite F
Sacramento, California  95841
(916) 332-8122
Facsimile — (916) 332-8153

/s/ W. James Young

W. JAMES YOUNG, Esq.
c/o National Right to Work Legal
      Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia  22160
(703) 321-8510

ATTORNEYS FOR PLAINTIFFS AND
THE CLASS THEY SEEK TO REPRESENT

H:\WP\California Cases\Hamidi.SEIU\Complaint.fin.wpd
Friday, 31 January  2014, 13:03:17 PM