JEFFREY B. DEMAIN (SBN 126715)
EVE H. CERVANTEZ (SBN 164709)
P. CASEY PITTS (SBN 262463)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
jdemain@altshulerberzon.com
ecervantez@altshulerberzon.com
cpitts@altshulerberzon.com

YORK J. CHANG (SBN 220415)
ANNE M. GIESE (SBN 143934)
SEIU Local 1000
1808 14th Street
Sacramento, California 95811
Telephone: (916) 554-1279
Facsimile: (916) 554-1292
agiese@seiu1000.org
ychang@seiu1000.org

Attorneys for Defendant
Service Employees International Union, Local 1000

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOUROSH KENNETH HAMIDI, et al., AND THE CLASS THEY SEEK TO REPRESENT<br><br>Plaintiffs,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000, et al.;<br><br>Defendants. | No. 2:14-cv-00319-WBS-KJN<br><br>**DECLARATION OF BRIAN CALDEIRA IN SUPPORT OF SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000's OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: April 20, 3015<br>Time: 2:00 p.m.<br>Courtroom: 5, 14th Floor<br>Judge: Hon. William B. Shubb |

I, Brian Caldeira, hereby declare as follows:

1. I am the Union Resource Center Director for the Service Employees International Union, Local 1000 ("Local 1000" or the "Union"), one of the defendants in the above-captioned case. I give this declaration in support of Local 1000's Opposition to Plaintiffs' Motion for Class Certification.

2. I have held the position of Union Resource Center Director for Local 1000 since January 1, 2013. Prior to that, I served as Resource Center Area Coordinator from 2004 to 2007, when I became Resource Center Manager, a position I still hold. In January 2013, the Resource Center undertook control and direction of Membership Services. I my current position, I oversee the Union's Resource Center, Call Center and Member Services Center. The Member Services Center is responsible for processing membership applications, non-germane objections and other changes and notices related to membership status. In my position as Union Resource Center Director, I have access to information regarding the state employees that Local 1000 represents, both members and non-members, including but not limited to their status as members, non-members, fair share fee objectors, and fair share fee challengers.

3. The Union provides the non-members it represents with an annual notice, referred to as a "*Hudson* notice," that informs them of their rights not to subsidize certain Union expenses that are not germane to collective bargaining and to challenge the Union's calculation of the reduced fee paid by those who choose not subsidize such expenses, sets forth the procedure they must follow to exercise those rights, and provides them with audited financial disclosure of the Union's major categories of expense. In my position as the Union Resource Center Director, I supervise the preparation and issuance of the Union's *Hudson* notice, so I am familiar with the process the Union follows in so doing. I understand that a copy of the Union's June 2013 *Hudson* notice for the July 1, 2013 through June 30, 2014 fee year is attached as Exhibit A to Plaintiffs' Complaint filed in this action.

4. To issue the *Hudson* notice each year, Local 1000 provides a third-party printing company with an electronic file containing the *Hudson* notice, which prints the notice as an 11 inch x17 inch booklet, saddle-staples it in the middle like a magazine, and folds it into an 8 1/2 inch x 11 inch format. The electronic file containing the notice also contains the Union's return address and its postal permit number (which is necessary to cover cost of postage), both of which are printed on the outside of

the folded booklet. (*See* Complaint, Exh. A, at fifteenth page.) Also included and printed on the outside of the folded booklet is the designation, "RETURN SERVICE REQUESTED," to enable the Union to determine whether any of the booklets were undeliverable, e.g., due to an incorrect address. (*See* Complaint, Exh. A, at fifteenth page.) The printing company then delivers the booklets to a third-party mailing company that is certified with the State Controller's Office ("SCO") for receipt of state private information.

5. However, because Local 1000 does not possess all of the non-members' mailing addresses, it must rely on the SCO, which possesses those addresses due to its function as the payroll agent of the state employer. The SCO provides an electronic file containing each non-member's name and address to the mailing company, which prints those addresses on the outside of the folded booklet, on the same side as the Union's return address and postal permit number. (*See* Complaint, Exh. A, at fifteenth page.) Finally, the mailing company deposits the addressed booklets with the United States Postal Service, all without disclosing the non-members' mailing addresses to the Union.

6. Local 1000 followed the foregoing procedure in 2013, as in previous years, and the June 2013 *Hudson* notice was mailed on or about May 24-25, 2013.

7. In compliance with state law, Local 1000 allows at least 30 days after distribution of the *Hudson* notices for non-members to submit objections to paying for non-chargeable expenses.

8. Local 1000 informed the SCO to reduce to the objector rate the fair share fee deduction of all non-members who submitted a timely deduction containing the required information in response to the June 2013 Hudson notice.

9. Occasionally, Local 1000 will receive timely fee objections that lack some of the required information. In such cases, Local 1000 gives the non-members who submitted such deficient information an opportunity to complete their objections and, if the incomplete objection was submitted near the end of the window period for submitting objections, Local 1000 extends the deadline for them to complete their objections. When the non-members do so within the extended time, Local 1000 honors their objections and informs the SCO to reduce their fair share fee deduction to the objector rate. Also occasionally, Local 1000 will receive communications from non-members claiming that they did not receive a *Hudson* notice. In such cases, the Union will ask those non-members for their current

mailing addresses and will inquire to the SCO whether the file of mailing addresses it sent to the mailing company contained those non-members' names and mailing addresses. If it did not, Local 1000 will provide those non-members with a new *Hudson* notice and a new, extended deadline for objecting to paying for non-chargeable expenses. Local 1000 will then honor any objections submitted within the extended deadline and will inform the SCO to reduce those objectors' fair share fee deduction to the objector rate. Finally, Local 1000 will sometimes receive communications from non-members claiming that they were unable to file a fee objection by the deadline for some other reason. In such cases, the Union will consider the reason given by the non-member and, if the failure to file a timely objection was due to a reason beyond the non-member's control, Local 1000 will accept and honor a late-filed objection. For example, a non-member once requested to file a late objection because the non-member was undergoing surgery and recovering from that surgery during the objection period. Local 1000 granted the request and honored the late-filed objection. Local 1000 followed the foregoing procedures described above in this paragraph in the period after the issuance of its June 2013 *Hudson* notice and, pursuant to those procedures, accepted and honored late-filed fee objections.

10. Local 1000 does not request the SCO to deduct agency fees at the full fee rate from the wages of any non-member who it knows to have submitted an objection that is timely (under either the original deadline or any applicable extended deadline) and contains the required information (as set forth in the *Hudson* notice).

11. The Union's membership and fee-payer data system allows it to determine on a monthly basis the number of individuals in each category: members, full fair share fee payers, and fee objectors (often referred to as "non-germane objectors" or "NGOs"). The numbers fluctuate on a monthly basis, as new employees are hired into the bargaining units represented by the Union, and incumbent employees leave those bargaining units for reasons including retirement, promotion to supervisory positions, disability, etc. The Union's records, maintained in the ordinary course of the Union's operations, reveal that for the month of July 2013, i.e., the first month of the July 2013 through June 2014 fee year, when fee objections submitted in response to the Union's June 2013 *Hudson* notice would have been accounted for, the Union represented a total of 90,027 state employees, of whom 55,241 were Union members and 34,786 were non-members. Of the non-members, 21,380 were full fair share fee

payers, and 13,406 were fee objectors. Thus, 13,406 non-members submitted timely and complete objections in response to the June 2013 *Hudson* notice, which the Union honored.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California on March 26, 2015.

_____
Brian Caldeira

DECLARATION OF BRIAN CALDEIRA IN SUPPORT OF SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000's OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Hamidi, et al. v. SEIU Local 1000, et al.*, Case No. 2:14-cv-00319-WBS-KJN

4