1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   KOUROSH KENNETH HAMIDI, et al.;      Civ. No. 2:14-319 WBS KJN
     and the class they seek to
13   represent,

14              Plaintiffs,              MEMORANDUM AND ORDER RE:
                                         MOTION FOR CLASS
15        v.                             CERTIFICATION AND
                                         APPOINTMENT OF CLASS COUNSEL
16   SERVICE EMPLOYEES INTERNATIONAL
     UNION LOCAL 1000; and BETTY YEE,
17   Controller State of California,

18              Defendants.

19

20                        ----oo0oo----

21          Eighteen plaintiffs,[1] who are employees of the State of

22   California, brought this putative class action lawsuit against

23   defendants Service Employees International Union Local 1000

24

25   ─────────────
          [1]   On March 23, 2015, plaintiffs Sandra Kieffer, Angel Lo,
26   and Mozelle Yarbrough stipulated to voluntarily dismiss their
     claims.  (Docket No. 33.)  Plaintiffs also withdrew their request
27   that the court appoint plaintiff Cecilia Stanfield to serve as a
     class representative, although Stanfield remains a named
28   plaintiff in this action.  (Id.)

                                    1

1   ("Local 1000") and the California State Controller.[2]  More than a

2   year has passed since plaintiffs filed this case, and no party

3   has yet moved for dismissal or otherwise tested its merits.  The

4   instant motion asks the court instead to decide whether this case

5   may be litigated as a class action.

6        Consequently, this Order addresses only plaintiffs'

7   motion for class certification and appointment of class counsel

8   pursuant to Federal Rule of Civil Procedure 23.  It expresses no

9   views on whether plaintiffs have stated a claim upon which the

10  requested relief can be granted or the ultimate merits of

11  plaintiffs' lawsuit.

12       Local 1000 engages in collective bargaining with the

13  state on behalf of plaintiffs and other public employees.  (See

14  Compl. ¶¶ 6, 8, 19 (Docket No. 1)); Cal. Gov't Code §§ 3513(a)-

15  (c), 3520.5.  Plaintiffs are not members of Local 1000.  (Compl.

16  ¶ 6.)  However, plaintiffs must pay a "fair share fee" to

17  compensate it for "fulfilling its duty to represent the employees

18  in their employment relations with the state."  Cal. Gov't Code

19  § 3513(k) (defining "fair share fee"); see also 8 C.C.R. § 32990

20  (defining "agency fee").  The State Controller deducts fair share

21  fees directly from a public employee's wages and remits them to

22  Local 1000 on a monthly basis.  See Cal. Gov't Code § 3515.7(b).

23

---

24       [2]  At the time plaintiffs filed their Complaint, John
    Chiang was California's state controller.  Betty Yee has since
25  succeeded Chiang to that office and is substituted as a party.
    See Fed. R. Civ. P. 25(d) (stating that, when a party is an
26  officer sued in his or her official capacity, "the officer's
    successor is automatically substituted as a party").  For
27  simplicity, the court will refer to this defendant only as the
    "State Controller."
28

1    Plaintiffs challenge the opt out method by which

2  defendants collect fees from non-union members to pay for the

3  union's partisan political and ideological activities.  (See

4  Compl. ¶¶ 30-33.)  On August 15, 2014, plaintiffs moved for class

5  certification and appointment of class counsel.  The class that

6  plaintiffs seek to represent consists of:

> all former, current, and future State of California
> employees employed in Bargaining Units 1, 3, 4, 11,
> 14, 15, 17, 20, and 21 who are, have been, or will be
> represented exclusively for purposes of collective
> bargaining by Local 1000, in three subclasses:
>
> a.   All individuals who pay compulsory fees to Local
>      1000 who are not members and who have, at one
>      time or another, specifically objected to the use
>      of their union fees for politics or other
>      nonbargaining activities;
>
> b.   All individuals who pay compulsory fees to Local
>      1000 who are not members and who have never
>      specifically objected to the use of their union
>      fees for politics or other nonbargaining
>      activities; and
>
> c.   All individuals who pay compulsory fees to Local
>      1000 who are not members and who have
>      specifically objected to the use of their union
>      fees for politics or other nonbargaining
>      activities and for whom Local 1000 has, for
>      whatever reason, refused to honor their
>      objections.

(Compl. ¶ 9; Pls.' Mot. at 2.)  Plaintiffs state that this class

is intended to encompass all potential fee objectors.  (Pls.'

Mem. at 3.)  Plaintiffs also explain that the subclasses included

within their proposed definition are for determining the amount

of damages only and that all members of the general class share

the claims asserted in their Complaint.[3]  (Pls.' Reply at 32 &

---

[3]   In light of some confusion regarding plaintiffs'
claims, the parties submitted a stipulation to the court on April
20, 2015, clarifying that plaintiffs are pursuing only two

1  n.38 (Docket No. 51).)

2  I.   Discussion

3          "For a class to be certified, a plaintiff must satisfy

4  each prerequisite of Rule 23(a) of the Federal Rules of Civil

5  Procedure and must also establish an appropriate ground for

6  maintaining class actions under Rule 23(b)."  Stearns v.

7  Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011); see Fed.

8  R. Civ. P. 23.  "The party seeking certification has the burden

9  of affirmatively demonstrating that the class meets the

10  requirements of [Rule 23]."  Mazza v. Am. Honda Motor Co., Inc.,

11  666 F.3d 581, 588 (9th Cir. 2012) (citing Wal-Mart Stores, Inc.

12  v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

13          A. Clarification of the Proposed Class

14          As a preliminary matter, plaintiffs acknowledge some

15  confusion as to the scope of the class they seek to certify.

16  (Pls.' Reply at 31-32.)  Plaintiffs state that, because their

17  claims pertain to periods and practices after June 2013, they

18  have no objection to making this time limitation explicit.  (Id.

19  at 31; see Stipulation & Order ¶ 4.)  The court will therefore

20  modify the proposed class definition to include nonmembers

21  claims:  First, plaintiffs allege that the opt out system
22  established by California law and Local 1000's June 2013 Notice,
   requiring nonmembers to notify Local 1000 of their objection to
23  paying for nonchargeable expenses and to renew their objection
   annually, violates the First Amendment.  (See Compl. ¶ 31;
24  Stipulation & Order ¶ 4 (Docket No. 47).)  Second, plaintiffs
   allege that Local 1000 improperly included litigation expenses
25  incurred in an earlier fair share fee case, Knox v. Service
26  Employees International Union, Local 1000, Civ. No. 2:05-02198
   MCE KJM, reported at 132 S. Ct. 2277 (2012), in the June 2013
27  Notice's allocation of chargeable expenses in violation of the
   First Amendment.  (See Compl. ¶ 30, Ex. A at 6; Stipulation &
28  Order ¶ 4.)

4

1   represented by Local 1000 "from June 2013 onward."

2           The court also notes that, as defined by plaintiffs,

3   subclass (c) is a lesser-included group of subclass (a).  The

4   court will separate these subclasses by adding to the definition

5   of subclass (a) the phrase "and whose objections were honored."

6   The court retains the power to modify this definition, and it

7   will be the duty of the parties' counsel to call to the court's

8   attention any other necessary adjustments.  See Cummings v.

9   Connell, 316 F.3d 886, 896 (9th Cir. 2003).

10          B. Rule 23(a)

11          Rule 23(a) restricts class actions to cases where:

12      (1)  the  class  is  so  numerous  that  joinder  of  all
        members is impracticable;

13
14      (2)  there  are  questions  of  law  or  fact  common  to  the
        class;

15      (3)  the  claims  or  defenses  of  the  representative
        parties  are  typical  of  the  claims  or  defenses  of  the
16      class; and

17      (4)  the  representative  parties  will  fairly  and
        adequately protect the interests of the class.

18
19   Fed. R. Civ. P. 23(a).  "The Rule's four requirements--

20   numerosity, commonality, typicality, and adequate representation-

21   -effectively limit the class claims to those fairly encompassed

22   by the named plaintiff's claims."  Dukes, 131 S. Ct. at 2551

23   (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156

24   (1982)) (internal quotation marks omitted).

25          A case's merits may be considered only "to the extent

26   . . . that they are relevant to determining whether the Rule 23

27   prerequisites for class certification are satisfied."  Amgen Inc.

28   v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1195 (2013);

5

1    see also Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983-84 &

2    n.8 (9th Cir. 2011) ("The district court is required to examine

3    the merits of the underlying claim in this context, only inasmuch

4    as it must determine whether common questions exist; not to

5    determine whether class members could actually prevail on the

6    merits of their claims.").

7                1. Numerosity

8                "A proposed class of at least forty members

9    presumptively satisfies the numerosity requirement." Avilez v.

10    Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012); see

11    also, e.g., Collins v. Cargill Meat Solutions Corp., 274 F.R.D.

12    294, 300 (E.D. Cal. 2011) (Wanger, J.).  Subclasses (a) and (b)

13    thus easily satisfy numerosity.  (See Calderia Decl. ¶ 11.)

14                Local 1000 challenges only the numerosity of subclass

15    (c), the "attempted objector" subclass.  (Local 1000's Opp'n at

16    34-35 (Docket No. 39).)  However, in light of plaintiffs'

17    clarification that all general class members will assert the same

18    two claims, (see Pls.' Reply at 32), the court concludes that

19    numerosity is satisfied as to the general class and will proceed

20    to the next requirement.

21                2. Commonality

22                Commonality requires a lawsuit to "depend upon a common

23    contention" that is "capable of classwide resolution--which means

24    that determination of its truth or falsity will resolve an issue

25    that is central to the validity of each one of the claims in one

26    stroke."  Dukes, 131 S. Ct. at 2551.  "What matters to class

27    certification . . . is not the raising of common 'questions'--

28    even in droves--but, rather the capacity of a classwide

1  proceeding to generate common answers apt to drive the resolution

2  of the litigation." Id.  "To assess whether the putative class

3  members share a common question . . . [the court] must identify

4  the elements of the class members' case-in-chief." Stockwell v.

5  City & Cnty. of San Francisco, 749 F.3d 1107, 1114 (9th Cir.

6  2014)

7                    a. Facts Relevant to Commonality

8             The parties do not dispute application of the same opt

9  out procedure to all nonmember public employees.  By default,

10 fair share fees deducted from public employees' wages reflect

11 both a union's collective bargaining and non-collective

12 bargaining expenditures.  See Cal. Gov't Code §§ 3513(k); 3515.7.

13 However, nonmembers may demand a return of the portion of the fee

14 used "in aid of activities or causes of a partisan political or

15 ideological nature only incidentally related to the terms and

16 conditions of employment." Id. § 3515.8.

17            In late May or June 2013, Local 1000 sent nonmembers a

18 Notice to Fair Share Fee Payers ("June 2013 Notice").  (Compl.

19 Ex. A (Docket No. 1-1); Decl. of Brian Caldeira ("Calderia

20 Decl.") ¶¶ 3, 6 (Docket No. 37).)  All nonmembers faced the same

21 opt out procedure, as explained in the notice, for raising an

22 objection should they wish to avoid the fee associated with

23 political or ideological expenditures.  (Caldeira Decl. ¶ 7.)

24 Local 1000 identified those individuals who objected for the

25 State Controller.  (Id. ¶ 8.)  The State Controller then deducted

26 either a full fee or a reduced fee from all nonmember public

27 employees' wages pursuant state law.  (See id. ¶ 11.)

28 ///

1              b. Plaintiffs' First Claim Satisfies Commonality

2          Plaintiffs' first claim "advances the theory that a

3  union is not permitted to seize from any 'potential objector'

4  fees exceeding those which serve a compelling state interest--

5  i.e., those for constitutionally-chargeable costs--absent their

6  affirmative consent."  (Pls.' Reply at 24; see Compl. ¶¶ 31-33.)

7  Language from the Supreme Court's recent decision in Knox invites

8  such a challenge, plaintiffs say.  See Knox v. Serv. Empl. Int'l

9  Union, Local 1000, 132 S. Ct. 2277, 2289-91 (2012).  The court

10  therefore understands this claim, like the claim in Knox, to

11  allege the opt out procedure does not comply with Chicago

12  Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292

13  (1986).

14          Before Knox reached the Supreme Court, the Ninth

15  Circuit employed a "balancing test" in Hudson challenges.  628

16  F.3d 1115, 1119-20 (9th Cir. 2010), rev'd and remanded, 132 S.

17  Ct. 2277 (2012).  The Supreme Court clarified the standard in

18  Knox by stating,

19       Far from calling for a balancing of rights or
     interests, Hudson made it clear that any procedure for
20       exacting fees from unwilling contributors must be
     "carefully tailored to minimize the infringement" of
21       free speech rights.  And to underscore the meaning of
     this careful tailoring, we followed that statement
22       with a citation to cases holding that measures
     burdening the freedom of speech or association must
23       serve a "compelling interest" and must not be
     significantly broader than necessary to serve that
24       interest.

25

26  132 S. Ct. at 2291 (internal citations omitted).  Application of

27  this standard to the present case reveals at least two core

28  questions of law common to the class: (1) whether the opt out

8

1    procedure serves a compelling state interest and (2) whether that

2    interest cannot be achieved through significantly less

3    restrictive means.  See Knox, 132 S. Ct. at 2291 & n.3; Hudson,

4    475 U.S. at 303.  Accordingly, sufficient commonality exists to

5    resolve plaintiffs' first claim for all class members at the same

6    time.  See Dukes, 131 S. Ct. at 2551-52.

7                    c. Plaintiffs' Second Claim Lacks Commonality

8              There is a "clear distinction between the adequacy of a

9    union's notice addressed by the Supreme Court in Hudson, and the

10   propriety of a union's chargeability determinations." Wagner v.

11   Prof'l Eng'r in Cal. Gov't, 354 F.3d 1036, 1046 (9th Cir. 2004)

12   (quoting Knight v. Kenai Peninsula Borough Sch. Dist., 131 F.3d

13   807, 813-14 (9th Cir. 1997)).  Case law addressing chargeability

14   determinations "categorically prohibit[s] only one type of First

15   Amendment harm: use of nonmembers' money to promote causes they

16   do not believe in." Grunwald v. San Bernardino City Unified Sch.

17   Dist., 994 F.2d 1370, 1375 (9th Cir. 1993) (emphasis added); see

18   also Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight

19   Handlers, Exp. & Station Emps., 466 U.S. 435, 456 (1984)

20   ("Petitioners may feel that their money is not being well-spent,

21   but that does not mean they have a First Amendment complaint.").

22   Unless the class as a whole opposes the union's political

23   activities, "[t]his is not and cannot be a class action." Bhd.

24   of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp. v.

25   Allen, 373 U.S. 113, 119 (1963).

26             There is no evidence that the proposed class as a whole

27   opposes the union's political activities.  If every potential

28   objector must prove that he or she subjectively disagrees with

                                    9

1   the union on political grounds--as opposed to some other reason

2   for not wanting to pay the fee--in order to obtain relief, this

3   claim lacks a common contention "capable of classwide resolution

4   . . . in one stroke." Dukes, 131 S. Ct. at 2551.  Accordingly,

5   because plaintiffs have failed to prove commonality as to their

6   second claim, the court will decline to certify it.  The rest of

7   this Order address only plaintiffs' first claim.

8          3. Typicality

9          "The test of typicality 'is whether other members have

10  the same or similar injury, whether the action is based on

11  conduct which is not unique to the named plaintiffs, and whether

12  other class members have been injured by the same course of

13  conduct.'"  Ellis, 657 F.3d at 984 (quoting Hanon v. Dataproducts

14  Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

15         The prior analysis of commonality supports the

16  conclusion that plaintiffs' first claim is typical of absent

17  class members'.  See Dukes, 131 S. Ct. at 2551 n.5 (noting that

18  "[t]he commonality and typicality requirements of Rule 23(a) tend

19  to merge").  However, to the extent plaintiffs assert an "as

20  applied" challenge to the opt out procedure in addition to their

21  facial First Amendment challenge, (see Compl. at 13), plaintiffs

22  have presented no evidence of the typicality of that theory.[4]

23  ────────────────

24         [4]    Defendants have provided the court with deposition
    testimony from several named plaintiffs suggesting they did not
25  receive the June 2013 Notice for various reasons.  Many named
    plaintiffs say they may have thrown notices from various years
26  away unopened after mistakenly believing the notices were union
    membership solicitations.  (See, e.g., Ammons Dep. at 115-116
27  (Docket No. 40); Blaylock Dep. at 155-56 (Docket No. 40); Giles
    Dep. at 82-84, 87-88 (Docket No. 40); Lopez Dep. at 99-104
28  (Docket No. 40).)  Other plaintiffs relocated their residences

1  See Legal Aid Servs. of Or. v. Legal Servs. Corp., 608 F.3d 1084,

2  1096 (9th Cir. 2010); Baird v. Cal. Faculty Ass'n, Civ. No. S-00-

3  0999 WBS DAD, 2000 WL 1028782, at *4 n.2 (E.D. Cal. July 13,

4  2000) (declining to certify an as applied class because

5  plaintiffs presented no evidence of typicality).  Accordingly,

6  the court will deny certification at this time of plaintiffs'

7  first claim in so far as it asserts an as applied challenge.

8        Defendants point to the fact that many class

9  representatives submitted fee objections, whereas others did not.

10 (See, e.g., Hamidi Dep. at 102, 107-09, 115 (Docket No. 40);

11 Christensen Dep. at 57-58 (Docket No. 40).)  "The suggestion that

12 actual objectors cannot represent a class of potential objectors

13 has already been rejected in this District."  Knox, 2006 WL

14 3147683, at *3 (citing Friedman v. Cal. State Emps. Ass'n, Civ.

15 No. S000101 WBS GGH, 2000 WL 288468, at *5 (E.D. Cal. Mar. 15,

16 2000)).  Plaintiffs and absent class members are similarly

17 situated with respect to the objection procedure afforded them.

18       Local 1000 also argues that plaintiffs are not typical

19 of the class because they differ from many absent class members

20 in their reasons for refraining from union membership and in

21 their opposition to Local 1000's political activities.  (Local

22 1000's Opp'n at 10-12.)  Local 1000 raises these arguments in the

23 _____

24 around the time the June 2013 Notice was mailed.  (See, e.g.,
   Ollis Dep. at 70-83, 106-07 (Docket No. 40); Giles Dep. at 90-91,

25 95-98 (Docket No. 40).)  Still others were out of state on
   military duty, (Browne Dep. at 63, 92, 100-104, 118-19 (Docket

26 No. 40)), had just resigned from union membership at the time the
   notice was sent, (McElroy Dep. at 109 (Docket No. 40)), or stated

27 that a neighbor or roommate may have collected the mail on the
   day the notice was received and never alerted its intended

28 recipient, (see Giles Dep. at 85-86; Browne Dep. at 109).

1  adequacy of representation prong of Rule 23(a)(4) as well.  The
2  court therefore addresses them below.

3          4. Adequacy of Representation

4          To fairly and adequately protect the interests of the
5  class, a class representative "must be part of the class and
6  possess the same interest and suffer the same injury as the class
7  members."  E. Tex. Motor Freight v. Rodriguez, 431 U.S. 395, 403
8  (1977) (internal quotations omitted).  "To determine whether
9  named plaintiffs will adequately represent a class, courts must
10  resolve two questions: '(1) do the named plaintiffs and their
11  counsel have any conflicts of interest with other class members
12  and (2) will the named plaintiffs and their counsel prosecute the
13  action vigorously on behalf of the class?'"  Ellis, 657 F.3d at
14  985 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th
15  Cir. 1998)).

16          a. Conflicts of Interest

17          Local 1000 has presented the court with thirty-one
18  declarations from individuals it says are putative class
19  members.[5]  The union argues these declarations prove a conflict

20          [5]   There is no evidence before the court explaining how
21  Local 1000 came by these declarations or what motivated the
   declarants to make them.  Several declarants say that they chose
22  to pay the full fair share fee, including the portion that funds
   nonchargeable expenditures, because they support Local 1000's
23  political activities.  (See, e.g., Gaeta Decl. ¶¶ 2, 4 (Docket
   No. 35); Lee Decl. ¶¶ 3-4 (Docket No. 35); Pischalnikoff Decl. ¶¶
24  2-4 (Docket No. 35).)  Some declarants say they simply do not
   care to take the time to object.  (See, e.g., Turner Decl. ¶¶ 3-4
25  (Docket No. 35) Smith Decl. ¶ 4 (Docket No. 35).)  Other
   declarants say they chose to become objectors for financial
26  reasons while still approving of Local 1000's political
   activities.  (See, e.g., Cerda Decl. ¶ 3 (Docket No. 35); Fuzesi
27  Decl. ¶¶ 4, 6 (Docket No. 35); Jonason Decl. ¶¶ 3, 5 (Docket No.
28  35); Ramirez Decl. ¶ 2 (Docket No. 35).)

1    between the interests of absent class members and the relief

2    plaintiffs seek in this lawsuit.  (Local 1000's Opp'n at 28.)

3              The court hesitates to draw this conclusion from the

4    evidence before it.  Only one of the thirty-one declarations

5    states a preference to retain the opt out procedure.  (See

6    Johnson Decl. ¶ 7 (Docket No. 35) ("I prefer to have an opt-out

7    system so that I can contribute to political activities without

8    having to opt-in every single year.").)  However, the Ninth

9    Circuit has rejected this kind of argument against class actions.

10   See Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 779-81 (9th

11   Cir. 1986) (concluding "the fact that there may be some who would

12   prefer that [an annuity retirement plan] remain in operation"

13   does not constitute a conflict of interest preventing class

14   certification).  A mere preference does not properly "conflict"

15   with plaintiffs' constitutional interests such that it renders

16   the representative parties inadequate.  See id. at 781.  If the

17   opt out procedure is found unconstitutional, it will be

18   unconstitutional notwithstanding the fact that some would prefer

19   it.  See id.

20             All other declarants speak only in sweeping

21   generalities that do not explicitly address whether they favor an

22   opt out procedure or oppose a refund of fair share fees.  Support

23   for a strong union, (see George Decl. ¶ 3 (Docket No. 35)),

24   approval of the union's political activities, (see Gaeta Decl. ¶¶

25   2, 4), or the view that the current opt out process is

26   straightforward, (Moreno Decl. ¶ 5 (Docket No. 35)), does not

27   necessarily conflict with plaintiffs' goal in this lawsuit.  For

28   example, an individual may favor both a strong union and an opt

1   in procedure for contributing to political activities--the two

2   views are not mutually exclusive.  The court therefore declines

3   to speculate about views the declarants have not expressed.[6]

4        Local 1000 also points to Gilpin v. AFSCME, AFL–CIO,

5   875 F.2d 1310 (7th Cir. 1989).  Gilpin affirmed a lower court's

6   denial of class certification in a fair share fee case because

7   the full "restitution" remedy sought by the plaintiffs

8   potentially conflicted with the interests of free riders within

9   the class.  See id. at 1313.

10       Plaintiffs' prayer for relief does not seek the remedy

11  at issue in Gilpin.  Compare Gilpin, 875 F.2d at 1313 ("The

12  [plaintiff] is seeking repayment to all the bargaining unit's

13  nonunion employees of the entire agency fees collected by the

14  union in the 1985 and 1986 school years . . . ."), with Compl. at

15  14 (seeking "the amount of agency fees improperly deducted from

16  their wages").  Moreover, full restitution of the entire fair

17  share fee is unavailable in the Ninth Circuit.  See Prescott v.

18  County of El Dorado, 177 F.3d 1102, 1109-10 (9th Cir. 1999).

19  Gilpin is therefore distinguishable.  See Cummings, 316 F.3d at

20  895-96 (affirming this court's prior decision to distinguish

21  Gilpin on similar grounds).[7]

22  _____

23      [6]   Local 1000 may wish the court to draw the speculative
    inference that an individual who says he or she favors a strong
24  union also disfavors a refund of nonchargeable fair share fees.
    The court follows well-established Ninth Circuit precedent in
25  declining to deny class certification on this basis.  See Soc.
    Servs. Union, Local 535 v. Santa Clara Cnty., 609 F.2d 944, 948
26  (9th Cir. 1979) ("Mere speculation as to conflicts that may
    develop at the remedy stage is insufficient to support denial of
27  initial class certification.").

28      [7]   The State Controller also argues that named plaintiffs

1              b. Vigorous Prosecution on Behalf of the Class

2              Local 1000 next argues that the representative

3  plaintiffs are not adequate because they do not understand their

4  fiduciary duties to absent class members or the goal of this

5  lawsuit.  (Local 1000's Opp'n at 12-16, 22-27.)  It bases this

6  contention on deposition testimony of the named plaintiffs

7  suggesting that seven of them did not understand the term "class

8  representative" or other legal terminology, (see, e.g., Tutt Dep.

9  at 26-27 (Docket No. 40); Giles Dep. at 23-24 (Docket No. 40);

10 Sarumi Dep. at 38-39 (Docket No. 40)), and others did not

11 understand the exact extent of the class they seek to represent,

12 (see, e.g., Blaylock Dep. at 52-53 (Docket No. 40); Browne Dep.

13 at 27 (Docket No. 40)).

14             Taken in context and without reliance on legal jargon,

15 however, the representative plaintiffs displayed an appropriate

16 understanding of the aims of this lawsuit and their role in it.[8]

17 are inadequate because they seek to represent bargaining units in
   which none of them work.  (State Controller's Opp'n at 7-8.)  The
18 State Controller cites no authority supporting the proposition
   that a named plaintiff must have the same or similar occupation
19 as class members, nor does it explain the relevance that a
   particular bargaining unit may have on the ability of the
20 representatives to "fairly and adequately protect the interests
   of the class." Fed. R. Civ. P. 23(a)(4).  Accordingly, this
21 argument is unpersuasive.
22
23             [8]   (See, e.g., Ammon Dep. at 27-28 ("Q: Do you have an
   understanding if you're asking the Court to appoint you as a
24 representative of other people in this case? A: Yes."); id. at
   35, 40 ("Q: Do you think it is fair for all of the members in the
25 bargaining unit to pay their fair share of the costs of that
   bargaining? A: As long as it's going for our bargaining.");
26 Blaylock Dep. at 51 ("My goal is . . . answer the question that
   the Supreme Court left open, why do I have to opt out of
27 something."); Browne Dep. at 31 ("My understanding is that
   everyone is required to at least pay a little bit of those
28

15

1   Plaintiffs also demonstrated knowledge of the fair share fee, the

2   opt out procedure, and other facts relevant to their claims.[9]

3   Accordingly, these class representatives can vigorously prosecute

4   and direct this lawsuit on behalf of absent class members.

5           To the extent some plaintiffs misunderstand legal terms

6   or litigation strategy, Local 1000 has not provided, and the

7   court has not found, any authority that requires them to have

8   such knowledge.  To the contrary, judges in this district have

9   found named plaintiffs competent to serve as class

10  representatives based on their retainer of qualified, experienced

11  attorneys to advise them and act on their behalf.  See, e.g., Dei

12  Rossi v. Whirlpool Corp., Civ. No. 2:12-00125 TLN, 2015 WL

13  1932484, at *5-6 (E.D. Cal. Apr. 28, 2015) (finding adequate

14  representation in part because "[p]laintiffs are represented in

15  this case by prominent law firms with extensive experience in

16  complex and class action litigation"); see also Hanlon, 150 F.3d

17  at 1021 ("Although there are no fixed standards by which 'vigor'

18

19  expenses, since on paper everyone benefits from that. . . . I
    think that is fair as long as the amount is correct and has been
20  decided fairly and is -- and the money is only to be used for
    collective bargaining."); Giles Dep. at 20-21 ("[W]e are hoping
21  to change that instead of having to opt out of fees, that we
    would have to opt in to fees. . . . This is a class-action suit,
22  so there are others that are in the class with me. . . . Similar
    employees with a similar complaint."); Sarumi Dep. at 31 ("Q: Are
23  you asking the court to certify a class of people who will
    benefit from this lawsuit?  A: That is correct."); Tutt Dep. at
24  21 ("I am part of this [lawsuit] because I believe that it is not
    fair that the union makes us opt out every single year. . . . I
25  don't want to pay for your advertising and the other things that
    you do.").
26

27

28          [9]     (See, e.g., Ammon Dep. at 36-41; Browne Dep. at 28-31;
    Giles Dep. at 24-27, 39-40; Tutt Dep. at 21.)

1    can be assayed, considerations include competency of counsel
2    . . . .").

3         Turning to counsel, plaintiffs are represented by W.
4    James Young of the National Right to Work Legal Defense and
5    Education Foundation, Inc.  Young has served as trial and
6    appellate counsel for several class actions, (see Young Decl. ¶ 9
7    (Docket No. 22-2)), including Knox, which was litigated out of
8    this district, see 2006 WL 3147683, at *4.  Local 1000 does not
9    contest Young's competence.  (Local 1000's Opp'n at 24 n.40.)

10        Accordingly, because the court finds no conflicts of
11   interest and is confident that plaintiffs and their counsel will
12   vigorously prosecute this case on the class's behalf, the court
13   concludes that the representative parties will fairly and
14   adequately protect the interests of the class.  See Ellis, 657
15   F.3d at 985.  The court further finds Young an appropriate class
16   counsel under the factors listed in Rule 23(g)(1) and will
17   therefore appoint him to that position.  See Fed. R. Civ. P.
18   23(g).

19        C. Rule 23(b)

20        Plaintiffs request certification under subsection
21   (b)(1)(A), (b)(2), or, in the alternative, (b)(3).  The proposed
22   class meets the criteria of Rule 23(b)(2).  The court therefore
23   need not address whether it meets the criteria of subsection
24   (b)(1)(A) or (b)(3).

25        Rule 23(b)(2) allows maintenance of a class action if
26   "the party opposing the class has acted or refused to act on
27   grounds that apply generally to the class, so that final
28   injunctive relief or corresponding declaratory relief is

                                17

1   appropriate respecting the class as a whole." Fed. R. Civ. P.

2   23(b)(2). "Subsection (b)(2) was designed largely to permit

3   maintenance of a class action as a vehicle for the redress of

4   civil rights violations." Int'l Molders' & Allied Workers' Local

5   Union No. 164 v. Nelson, 102 F.R.D. 457, 462 (N.D. Cal. 1983)

6   (citing Alliance to End Repression v. Rochford, 565 F.2d 975,

7   979, n.9 (7th Cir. 1977)).

8           Subsection (b)(2) addresses injunctive and declaratory

9   relief only, not monetary damages. In Dukes, the Supreme Court

10  held that claims for "individualized" monetary relief cannot be

11  maintained under (b)(2). Dukes, 131 S. Ct. at 2557-61. The

12  Court explained:

            The key to the (b)(2) class is the indivisible nature
13          of the injunctive or declaratory remedy warranted--the
14          notion that the conduct is such that it can be
            enjoined or declared unlawful only as to all of the
15          class members or as to none of them. . . . [I]t does
            not authorize class certification when each class
16          member would be entitled to an individualized award of
17          monetary damages.

18          Id. at 2557 (internal quotation marks and citations

19  omitted). The Supreme Court did not decide, however, whether

20  "incidental" monetary relief is consistent with subsection

21  (b)(2). Id. at 2560; see also Wang v. Chinese Daily News, Inc.,

22  737 F.3d 538, 544 (9th Cir. 2013).

23          Plaintiffs seek injunctive and declaratory relief as

24  well as monetary damages for "the amount of agency fees

25  improperly deducted from their wages" and nominal damages. (See

26  Compl. at 14; Pls.' Reply at 32 n.38.) They argue these damages

27  are not the kind of "individualized" damages banished from

28
                                    18

1  subsection (b)(2) by Dukes because a refund of deducted fees will

2  flow directly from the injunctive and declaratory relief they

3  seek.  (Pls.' Reply at 32-33.)

4       For an example, plaintiffs point to the court's award

5  of damages in Knox.  After the Supreme Court remanded that case

6  to this court, Judge England ordered: "Defendant [Local 1000]

7  shall refund to Plaintiffs all monies exacted for the 'Emergency

8  Temporary Assessment to Build a Political Fight-Back Fund,' for

9  the entirety of the period during which the assessment was

10  exacted, plus interest."  Knox, 2013 WL 2434606, at *3.

11       The court agrees that a similar order would not amount

12  to individualized damages under Dukes because its "indivisible

13  nature" comports with the "key to the (b)(2) class."  See Dukes,

14  131 S. Ct. at 2557.  The court will therefore grant class

15  certification pursuant to Rule 23(b)(2).  If additional hearings

16  or individualized determinations become necessary at some later

17  time, the court will modify or decertify the class.  See

18  Cummings, 316 F.3d at 896.

19       Mindful of its limited ability to consider a claim's

20  merits for purposes of this motion, see Amgen, 133 S. Ct. at

21  1195, the court expresses no views on whether the monetary

22  damages plaintiffs request are available under claim one.  No

23  party has moved for dismissal or properly asked the court to

24  address that question.  See Cummings v. Connell, 177 F. Supp. 2d

25  1060, 1068-73 (E.D. Cal. 2001) (addressing the compensability of

26  claims and appropriate relief on motion for summary judgment).

27  Accordingly, the court will not consider it here.

28  ///

1  II.   Conclusion

2            Plaintiffs' first claim has satisfied all the

3  prerequisites of Rule 23(a) and has met the criteria of Rule

4  23(b)(2).  Accordingly, the court will certify the class, naming

5  the requested plaintiffs as class representatives and appointing

6  class counsel.

7            IT IS THEREFORE ORDERED that plaintiffs' motion for

8  class certification and for appointment of class counsel be, and

9  the same hereby is, GRANTED in part and DENIED in part.  The

10  court certifies only plaintiffs' first claim to the extent it

11  asserts a facial First Amendment challenge.  The court denies

12  without prejudice (1) certification of plaintiffs' first claim to

13  the extent it asserts an as applied First Amendment challenge and

14  (2) certification of plaintiffs' second claim.

15            The certified class shall consist of:

16      all former, current, and future State of California
        employees employed in Bargaining Units 1, 3, 4, 11,
17      14, 15, 17, 20, and 21 who are, have been, or will be
        represented exclusively for purposes of collective
18      bargaining by Local 1000, from June 2013 onward, in
        three subclasses:
19

20      a.   All individuals who pay compulsory fees to Local
             1000 who are not members and who have, at one
21           time or another, specifically objected to the use
             of their union fees for politics or other
22           nonbargaining activities, and whose objections
             were honored;

23      b.   All individuals who pay compulsory fees to Local
             1000 who are not members and who have never
24           specifically objected to the use of their union
             fees for politics or other nonbargaining
25           activities; and

26      c.   All individuals who pay compulsory fees to Local
             1000 who are not members and who have
27           specifically objected to the use of their union
             fees for politics or other nonbargaining
28

1    activities and for whom Local 1000 has, for
2    whatever reason, refused to honor their
     objections.

3        The court appoints plaintiffs Hamidi, McElroy, Ammons,
4    Blaylock, Browne, Christensen, Giles, Lopez, Miller, Morrish,
5    Ollis, Sarumi, Toledo, and Tutt as class representatives and
6    further appoints W. James Young as class counsel.

7    Dated:  May 22, 2015

8

9    _____
     WILLIAM B. SHUBB
10   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            21