UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KOUROSH HAMIDI, et al., and the CLASS THEY SEEK TO REPRESENT,<br><br>Plaintiffs,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 1000, and BETTY YEE, California State Controller,<br><br>Defendants. | CIV. NO. 2:14-cv-319 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT |

----oo0oo----

Fifteen employees of the state of California ("plaintiffs")[1] brought this class action against defendants Service Employees International Union Local 1000 ("Local 1000")

---

[1] There were originally eighteen plaintiffs. (See Compl. ¶ 6 (Docket No. 1).) Three have been dismissed from this action. (Docket No. 33.)

1

and the California state controller,[2] alleging that defendants' 'opt-out' system for collecting optional union fees violates the First Amendment. (Compl. (Docket No. 1).) Plaintiffs now move for summary judgment against defendants. (Pls.' Mot. (Docket No. 64).) Local 1000 cross-moves for summary judgment, and the state controller cross-moves for partial summary judgment, against plaintiffs. (Local 1000's Cross-Mot. (Docket No. 67); State Controller's Cross-Mot. (Docket No. 74).)

I. Factual and Procedural History

Plaintiffs are employees of the state of California. (Compl. ¶ 6.[3]) California recognizes Local 1000 as the exclusive collective bargaining representative of plaintiffs and other state employees. (Id. ¶ 19.) Employees represented by Local 1000 may, but are not required to, join Local 1000 as dues-paying members. (Id. ¶ 20.) Plaintiffs have not joined Local 1000 as dues-paying members. (Id. ¶ 6.)

Employees represented by, but not dues-paying members of, Local 1000 ("nonmembers") must, pursuant to a series of 'agency shop' agreements between Local 1000 and the state, pay

---

[2] At the commencement of this action, the California state controller was John Chiang. (Compl. ¶ 7.) Chiang has since been succeeded by Betty Yee. (State Controller's Cross-Mot. at 1 n.1 (Docket No. 74).) For purposes of clarity, the court will refer to the California state controller by title, rather than by name.

[3] The facts discussed in this Order are taken from plaintiffs' verified Complaint. "A verified complaint may be treated as an affidavit [on a motion for summary judgment] to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant[s are] competent to testify." Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985). Unless expressly noted, the parties do not dispute the facts discussed in this Order.

2

Local 1000 a 'fair share' fee. (Id. ¶ 20.) Nonmembers may choose to pay the "full" fair share fee, which Local 1000 uses to fund expenditures both germane and not germane to collective bargaining, or a "reduced" fair share fee, which is used to fund only expenditures that are germane to collective bargaining.[4] (See id. ¶¶ 20-21; Decl. of Brian Caldeira ("Caldeira Decl.") ¶ 3 (Docket No. 37).) Non-"germane" expenditures include contributions to political causes. (Compl. ¶ 21.)

In deciding whether to charge nonmembers the full or reduced fair share fee, Local 1000 has, with the state's authorization and assistance, implemented an 'opt-out' system. See (id. ¶ 26); Cal. Gov't Code § 3515.8 (providing "refund" procedure whereby state employees may "demand . . . return of any part of [a fair share] fee . . . [designated to] aid . . . activities or causes of a partisan political or ideological nature"); id. § 3515.7 (requiring that "state employer . . . deduct the amount specified by the [collective bargaining representative] from the salary or wages of every employee" and "remit[]" such funds to the representative each month).

Under that system, Local 1000 sends nonmembers, prior

---

[4] It is well-established that unions may require nonmembers to pay the portion of fair share fees that are used to fund "germane" expenditures. See Ry. Emp. Dep't v. Hanson, 351 U.S. 225, 238 (1956) (unions may compel nonmember employees to pay fees); Abood v. Detroit Bd. of Ed., 431 U.S. 209, 235 (1977) (compelled union fees must be "germane to . . . collective[]bargaining"). Fees used to fund "ideological causes not germane to . . . collective-bargaining," by contrast, may not be compelled. See Ellis v. Bhd. of Ry., 466 U.S. 435, 447 (1984) ("The union . . . could not, consistently with the Constitution, collect from dissenting employees any sums for the support of ideological causes not germane to its duties as collective-bargaining agent.").

3

1    to each annual fee cycle, a notice ("Hudson notice") informing
2    them that they will be charged the full fair share fee for the
3    upcoming cycle unless they opt out by sending back a written
4    statement stating that they wish to be charged only the reduced
5    fair share fee.  (See Compl. ¶¶ 12, 26a-c.)  The opt-out
6    statement must include the objector's name, signature, address,
7    department, and unit, and, per Local 1000's instructions, "should
8    include, for identification purposes, [the objector's] social
9    security number."  (Id. Ex. A, Hudson Notice at 3 (Docket No. 1-
10   1).)  The statement must be sent by postal mail within a
11   specified period, and employees must renew their objections each
12   year.  (Compl. ¶ 26g.)  Nonmembers who do not opt out pursuant to
13   the above procedure are charged the full fair share fee, (id. ¶
14   26a), which the state controller deducts from their paychecks and
15   forwards to Local 1000, Cal. Gov't Code ¶ 3515.7.
16           On January 31, 2014, plaintiffs filed this action
17   against defendants.  (Compl. at 15.)  Plaintiffs' sole cause of
18   action, brought under 42 U.S.C. § 1983, alleges that Local 1000's
19   fee collection system violates the First Amendment by
20   "requir[ing] that individuals pay agency fees . . . [that]
21   subsidiz[e Local 1000's] political and other non-bargaining
22   activities, absent their affirmative consent."  (Id. ¶ 31.)
23   Plaintiffs also allege, under the same cause of action, that
24   Local 1000's opt-out procedure--which requires nonmembers to
25   renew their objections each year, send their objections by postal
26   mail, and disclose their social security numbers in their
27   objections--fails to meet the constitutional standard set forth
28   in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292

(1986). (See id. ¶ 32; Pls.' Mot., Mem. ("Pls.' Mem.") at 18-19 (Docket No. 64-2).)

The court has certified plaintiffs' cause of action for class treatment to the extent it is brought as a facial challenge upon the constitutionality of Local 1000's opt-out requirement and procedure. (See May 22, 2015 Order at 3 n.3, 20 (Docket No. 53).) Plaintiffs have not, to date, raised any arguments pertaining to any as-applied challenges they might bring as individuals in this action, and appear to have waived those challenges in their Opposition to Local 1000's Cross-Motion.[5] The only challenge pending in this action, therefore, is plaintiffs' facial challenge.

Plaintiffs and Local 1000 now move for summary judgment

---

[5] Any as-applied challenge brought in this action would be predicated upon individual plaintiffs not receiving Hudson notices, receiving untimely Hudson notices, or not having their objections honored. There are no allegations that Local 1000 failed to honor any individual objections in this case. Plaintiffs Ammons, Christensen, Giles, Lopez, Miller, Ollis, and Toledo testify that they did not receive Hudson notices for the 2013-2014 fee cycle, and plaintiff Tutt testifies that she received notice after Local 1000's 2013-2014 objection deadline had passed. (Compl. ¶¶ 22-23.) Local 1000 disputes that plaintiffs failed to receive timely Hudson notices in its Cross-Motion memorandum, (see Local 1000's Cross-Mot., Mem. at 5-6 (citing Local 1000's Resp. to Pls.' Statement of Undisputed Facts at 11-14 (Docket No. 69)) (Docket No. 68)), and notes that it "has implemented a procedure for addressing . . . late-filed objections, incomplete objections, asserted failures to receive Hudson notices, and the like, whereby [it] will provide replacement Hudson notices and extend time for filing fee objections, where it can be determined that the error was not the fault of the nonmember," (id. at 28 (citing Caldeira Decl. ¶¶ 9-10)). Plaintiffs did not respond to any of Local 1000's facts in their Opposition, and concede that whether they received timely notices is not "material to the claim raised." (Pls.' Opp'n at 9 (Docket No. 87).) Accordingly, the court understands plaintiffs to have waived their as-applied challenges.

with respect to plaintiffs' facial challenge.  Plaintiffs seek judgment declaring Local 1000's opt-out system unconstitutional, permanently enjoining defendants from enforcing the system, and ordering that defendants pay plaintiffs and the nonmember class compensatory damages for fees "exceeding constitutionally-chargeable costs" ("non-'germane' fees") collected pursuant the system.  (Pls.' Proposed Order at 2-3 (Docket No. 83).)  Local 1000 seeks judgment denying plaintiffs' challenge and dismissing this action with prejudice.  (Local 1000's Proposed Order at 5 (Docket No. 73).)

The state controller separately moves for partial summary judgment denying plaintiffs' challenge to the extent it seeks monetary damages against her.  (State Controller's Cross-Mot. at 2.)  Plaintiffs have conceded that they are barred from recovering monetary damages against the state controller under the doctrine of sovereign immunity.  (Pl.'s Opp'n at 2 (Docket No. 87)); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Accordingly, the court will grant judgment to the state controller to the extent plaintiffs seek monetary damages against her, and decide plaintiffs' claim for declaratory and injunctive relief against her together with their claim for the same relief against Local 1000.[6]

II. Legal Standard

Summary judgment is proper "if the movant shows that

---

[6] The parties agreed at oral argument that the state controller cannot be held liable for monetary damages in this action.  The state controller agreed to be bound by the court's ruling on plaintiffs' claim for declaratory and injunctive relief against Local 1000.

6

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]here the operative facts are substantially undisputed, and the heart of the controversy is the legal effect of such facts, such a dispute effectively becomes a question of law that can, quite properly, be decided on summary judgment." Joyce v. Renaissance Design Inc., No. CV 99-07995 LGB (EX), 2000 WL 34335721, at *2 (C.D. Cal. May 3, 2000); see also Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985) ("[W]here the palpable facts are substantially undisputed, [the controverted] issues can become questions of law which may be properly decided by summary judgment.").

III. Discussion

    A.   Constitutionality of Opt-Out Requirement

Plaintiffs' challenge to the constitutionality of Local 1000's opt-out requirement arises from the United States Supreme Court's decision in Knox v. Serv. Employees Int'l Union, Local 1000, 132 S.Ct. 2277 (2012). Language from Knox, plaintiffs contend, suggests that an opt-out system for collecting non-"germane" union fees violates the First Amendment. Local 1000 argues, in response, that Knox overruled neither prior Supreme Court cases that expressly assumed that the opt-out requirement is constitutionally acceptable, nor the Ninth Circuit's decision in Mitchell v. Los Angeles Unified Sch. Dist., 963 F.2d 258 (9th

1  Cir. 1992), which held "that the Constitution does not mandate a
2  system under which nonmembers pay full union dues only if they
3  opt in," id. at 260.

4  The Supreme Court has long assumed, without expressly
5  deciding, that an opt-out system for collecting non-"germane"
6  fees is tolerable under the First Amendment.  In Int'l Ass'n of
7  Machinists v. Street, 367 U.S. 740 (1961), the Court was
8  presented with the question of whether the Railway Labor Act
9  authorized unions to use fees exacted from employees to fund
10 political causes which they opposed.  Id. at 743-44.  After
11 holding that the Act did not grant unions such power, the Court
12 stated, in dicta, that any remedies granted to employees who were
13 subject to such use of their fees "would properly be granted only
14 to [those] who have made known to the union officials that they
15 do not desire their funds to be used for political causes to
16 which they object."  Id. at 774.  "[D]issent," the Court stated,
17 "is not to be presumed."  Id.  "It must affirmatively be made
18 known to the union by the dissenting employee."  Id.

19 Since Street, the Court has reiterated the admonition
20 that "dissent is not to be presumed" in a number of other cases.
21 In Abood v. Detroit Bd. of Ed., 431 U.S. 209 (1977), the Court
22 held that unions may not, as a constitutional matter, fund
23 political activities using fees exacted from employees "who
24 object" to such activities, id. at 235-36, 238, noting again that
25 under Street, "dissent [must] be affirmatively indicated" for the
26 objecting employee to be eligible for relief, id. at 239; see
27 also Hudson, 475 U.S. at 306 ("In Abood, we reiterated that the
28 nonunion employee has the burden of raising an objection . . .

8

.").  The Court expressed a similar sentiment in Hudson, where it explained that one of the reasons Hudson notices must meet certain procedural requirements is because such requirements protect the First Amendment rights of nonunion employees, who "bear[] the burden of objecting."  Id. at 307.

Many other cases have, in reliance upon Street's admonition, understood the line between employees who may and may not be charged non-"germane" fees to be drawn at whether they object.  See Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 520 (1991) (holding that certain lobbying activities may not be charged to "objecting employees" (emphasis added)); Ellis v. Bhd. of Ry., 466 U.S. 435, 453 (1984) (holding that certain litigation expenses may not be charged to "objecting employees" (emphasis added)); Bhd. of Ry. v. Allen, 373 U.S. 113, 118 (1963) ("No respondent who does not . . . prove that he objects to [political] use [of fees] will be entitled to relief." (emphasis added)).

Against the backdrop of Street and its progeny, the Ninth Circuit was faced squarely with the question of whether an opt-out system for collecting non-"germane" fees violates the First Amendment in Mitchell.  There, unlike in Street and its line of cases, the constitutionality of a union's opt-out system was the dispositive issue.  See Mitchell, 963 F.2d at 259.  After recounting the "long line of Supreme Court cases" which assumed that the opt-out requirement is constitutionally acceptable, "beginning with [Street]," the Ninth Circuit concluded that "[t]here is . . . no support for the plaintiffs' position . . . that affirmative consent to deduction of full fees is required in

order to protect their First Amendment rights." Id. at 261. "[N]onunion members' rights are adequately protected," the Ninth Circuit held, "when they are given the opportunity to object to such deductions . . . ." Id.

Mitchell remained largely unquestioned until the Supreme Court's decision in Knox. In Knox, the issue before the Court was whether a union may constitutionally require employees to pay a "special . . . mid-year dues increase," not disclosed in its annual Hudson notice, to fund an "Emergency . . . Political Fight-Back Fund." Knox, 132 S.Ct. at 2285, 2296 n.9. The Court held that it may not, and further held that such a fee may only be imposed with the "affirmative consent" of employees. Id. at 2296.

While Knox did not deal squarely with whether unions may implement opt-out systems for collecting non-"germane" fees that are disclosed in annual Hudson notices, see id. at 2285 ("Hudson concerned a union's regular annual fees. The present case, by contrast, concerns the First Amendment requirements applicable to a special assessment or dues increase that is levied to meet expenses that were not disclosed when the amount of the regular assessment was set."), the Knox Court devoted several paragraphs to criticizing Street and the line of cases citing Street which assumed that they may.

"[R]equiring objecting nonmembers to opt out of paying the nonchargeable portion of union dues," the Court noted, "represents a remarkable boon for unions." Id. at 2290. "Once it is recognized, as our cases have, that a nonmember cannot be forced to fund a union's political or ideological activities,

10

what is the justification for putting the burden on the nonmember to opt out of making such a payment?" the Court asked. Id. "An opt-out system creates a risk that the fees paid by nonmembers will be used to further political and ideological ends with which they do not agree," which is in tension with Hudson's requirement that "any procedure for exacting fees from unwilling contributors . . . be 'carefully tailored to minimize the infringement' of free speech rights." Id. at 2290-91 (quoting Hudson, 475 U.S. at 303).

The Court then characterized Street's "dissent" admonition as "dicta" arrived at "without any focused analysis" and an "offhand remark" that "c[a]me about more as a historical accident than through the careful application of First Amendment principles." Id. at 2290.

In light of Knox's criticism of Street, plaintiffs argue, this court should find the opt-out requirement to be unconstitutional. To be precise, plaintiffs "do not argue that Knox . . . reversed the Supreme Court's prior decisionmaking in Street." (Pls.' Opp'n at 11.) Rather, they argue that Knox proves Street's admonition "never was binding precedent" to begin with. (Id.) Plaintiffs further argue that "Knox explicitly reject[ed] the . . . analysis underlying [the Ninth Circuit's] decision in Mitchell," and thus indicates that Mitchell is no longer good law. (Id.; Pls.' Mem. at 11-12.) Plaintiffs argue that neither Street nor Mitchell bind this court, and that therfore the court is free to decide, anew, whether the opt-out requirement is constitutional. (Pls.' Mem. at 12.) In light of Knox's criticism of Street, plaintiffs argue, the court should

11

1  find that such a requirement violates the First Amendment.
2         The court notes that notwithstanding its criticism of
3  Street, Knox does not control the outcome of this case.  Despite
4  characterizing Street's admonition as "dicta," Knox did not go to
5  the extent of ruling that the admonition was unconstitutional.
6  Nor did Knox hold that unions must obtain employees' "affirmative
7  consent" to collect non-"germane" fees in all circumstances.
8  Instead, Knox limited the "affirmative consent" requirement to
9  "special . . . mid-year dues increase[s]."  See Knox, 132 S.Ct.
10 at 2296 ("[W]hen a public-sector union imposes a special
11 assessment or dues increase, the union . . . may not exact any
12 funds from nonmembers without their affirmative consent."
13 (emphasis added)); see also id. at 2285 ("Hudson concerned a
14 union's regular annual fees.  The present case, by contrast,
15 concerns the First Amendment requirements applicable to a special
16 assessment or dues increase that is levied to meet expenses that
17 were not disclosed when the amount of the regular assessment was
18 set."); id. at 2295 (noting that previous cases "permitt[ed]
19 unions to use opt-out rather than opt-in schemes when annual dues
20 are billed," and that the present case presented a "new
21 situation").  Because this case concerns fees collected pursuant
22 to annual Hudson notices, rather than a special mid-year dues
23 increase, Knox is not controlling.
24        What the court is left with, then, is Mitchell, and the
25 question of whether it remains good law after Knox.  Addressing
26 the relationship between circuit and Supreme Court precedents,
27 the Ninth Circuit has held that its precedents remain binding law
28 in this circuit until the Supreme Court "undercut[s] the theory

12

or reasoning underlying [its] precedent in such a way that the cases are clearly irreconcilable." Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003). Clear irreconcilability "is a high standard." Lair v. Bullock, 697 F.3d 1200, 1207 (9th Cir. 2012). "It is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." Id. Nor is it enough for the intervening higher authority to "chip[] away at the theory behind" a circuit precedent, or send a "strong signal[]" that a circuit precedent ought to be reconsidered. United States v. Green, 722 F.3d 1146, 1150 (9th Cir. 2013). Instead, "the intervening case must [be] . . . clearly irreconcilable." Id. (emphasis in original).

Knox is not "clearly irreconcilable" with Mitchell. As discussed above, Knox's criticism of Street did not rise to the level of holding Street's admonition and other cases' reliance upon it to be unconstitutional. Moreover, Knox's holding that unions must obtain employees' affirmative consent before charging them non-"germane" fees was expressly limited to a "special . . . mid-year dues increase" levied by a union after it had already charged employees fees pursuant to an annual Hudson notice. See Knox, 132 S.Ct. at 2285, 2295-96. Mitchell, in contrast with Knox, concerned fees charged pursuant to an annual Hudson notice. See Mitchell, 963 F.2d at 259 (explaining that case concerned fees charged pursuant to a Hudson notice); (Decl. of Jeffrey Demain ("Demain Decl.") Ex. 4, Mitchell v. Los Angeles Unified Sch. Dist. Compl. ¶¶ 27-30, 39, (showing that Mitchell concerned annual dues) (Docket No. 72-4)). Because Knox did not hold

1  Street's admonition to be unconstitutional, and because Knox and
2  Mitchell apply to different factual circumstances, Knox and
3  Mitchell are not "clearly irreconcilable."  See Lair, 697 F.3d at
4  1207; Green, 722 F.3d at 1150.

5  The court's analysis of Mitchell's viability after Knox
6  is confirmed by the Ninth Circuit's ruling in Friedrichs v.
7  California Teachers Ass'n, No. 13-57095, 2014 WL 10076847 (9th
8  Cir. 2014).  There, plaintiff employees brought action, after
9  Knox was decided, alleging that unions violated their First
10 Amendment rights by "requiring [them] to undergo opt out
11 procedures to avoid making financial contributions in support of
12 'non-chargeable' union expenditures."  Friedrichs v. California
13 Teachers Ass'n, No. SACV 13-676-JLS CWX, 2013 WL 9825479, at *1-2
14 (C.D. Cal. Dec. 5, 2013).  The district court entered judgment
15 for the unions, id. at *3, and the case was appealed to the Ninth
16 Circuit.  Citing Mitchell as good law and noting that "the
17 questions presented [on] appeal . . . are governed by controlling
18 Supreme Court and Ninth Circuit precedent," the Ninth Circuit
19 affirmed the district court's judgment.  Friedrichs, 2014 WL
20 10076847, at *1.  The Ninth Circuit's affirmation was itself
21 subsequently "affirmed by an equally divided [Supreme] Court."
22 Friedrichs v. California Teachers Ass'n, 136 S. Ct. 1083 (2016).

23 Friedrichs confirms that Mitchell remains good law
24 after Knox.  Because Mitchell remains good law after Knox, the
25 court must deny plaintiffs' challenge to the constitutionality of
26 Local 1000's opt-out requirement.  Accord Hoffman v. Inslee, No.
27 C14-200-MJP, 2016 WL 6126016, at *3 (W.D. Wash. Oct. 20, 2016)
28 (denying challenge to constitutionality of union's opt-out

14

requirement in light of Friedrichs).

### B. Constitutionality of Opt-Out Procedure

Plaintiffs' challenge to the constitutionality of Local 1000's opt-out procedure is brief compared to their challenge of its opt-out requirement. (See Pls.' Mem. at 18-19.) Plaintiffs take issue only with three aspects of Local 1000's procedure: (1) the requirement that objections be renewed each year, (2) the requirement that nonmembers send their objections by postal mail, and (3) the requirement that nonmembers state their social security numbers in their objections. (Id.)

Under Hudson, a union's procedure for collecting fees from nonmembers must be "carefully tailored to minimize the infringement" upon nonmembers' free speech rights.[7] Hudson, 475 U.S. at 303. "[N]ot every procedure that may safeguard protected speech," however, "is constitutionally mandated." Waters v. Churchill, 511 U.S. 661, 670 (1994) (O'Connor, J., plurality op.). Hudson itself noted that there are procedural safeguards that, while more protective of nonmembers' First Amendment rights than others, are not required by the Constitution. See Hudson, 475 U.S. at 308 n.21 ("We do not agree . . . that a full-dress administrative hearing [as to a union's determination of chargeable fees], with evidentiary safeguards, is part of the

---

[7] Hudson also requires that unions "include an adequate explanation of the basis for [their] fee" in their annual notices, provide "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker," and hold "the amounts reasonably in dispute" in escrow "while such challenges are pending." Hudson, 475 U.S. at 310. Those requirements are not at issue in this case. (Pls. Mem. at 10 n.7 (noting that Hudson's financial disclosure, dispute resolution, and escrow requirements are "not specifically at issue here").)

15

1  constitutional minimum.  We think that an expeditious arbitration
2  might satisfy the requirement of a reasonably prompt decision by
3  an impartial decisionmaker . . . ."); see also Mitchell, 963 F.2d
4  at 261 (noting that opt-in system was not required under Hudson).
5          Plaintiffs contend that requiring them to renew their
6  objections each year and send their objections by postal mail
7  constitute a "cumbersome" and "excessive[]" burden.  (Pls.' Mem.
8  at 19.)  They further argue that requiring them to disclose their
9  social security numbers in their objections triggers the threat
10 of identity theft, which "discourage[s]" objections.  (Id.)
11 Because such requirements make it less likely that nonmembers
12 will file objections, they argue, Local 1000's opt-out procedure
13 fails to meet the standard set forth in Hudson.
14         Notwithstanding plaintiffs' arguments, it appears that
15 the Ninth Circuit has ratified the annual renewal and postal mail
16 requirements at issue here.  In Friedrichs, one of the questions
17 raised on appeal was whether a union's requirement that employees
18 "renew their objection in writing every year" is permissible
19 under the First Amendment.  (See Demain Decl. Ex. 6, Friedrichs
20 v. California Teachers Ass'n Appellants' Br. at 22-23 (Docket No.
21 72-6); see also id. Ex. 5, Friedrichs v. California Teachers
22 Ass'n Compl. ¶ 10 ("Plaintiffs additionally request that this
23 Court declare that the Defendants' practice of requiring an
24 annual affirmative 'opt out' . . . violates the First Amendment .
25 . . .") (Docket No. 72-5).)  The Ninth Circuit noted, in its
26 order affirming judgment against the employees, that it "reviewed
27 . . . the briefing filed in [the] appeal" and found "that the
28 questions presented in [the] appeal are so insubstantial as not

16

to require further argument."[8]  Friedrichs, 2014 WL 10076847, at *1.

Similarly, in Mitchell, the opt-out system at issue required nonmembers to object "by certified mail." Mitchell v. Los Angeles Unified Sch. Dist., 744 F. Supp. 938, 941 (C.D. Cal. 1990). In upholding the constitutionality of the union's opt-out requirement, the Ninth Circuit stated that "[t]he procedures followed by the union to give plaintiffs the opportunity to object to the full agency fee complied with the applicable standard to ensure protection of their First Amendment rights." Mitchell, 963 F.2d at 263.

In light of Friedrichs and Mitchell, the court finds that Local 1000's annual renewal and postal mail requirements are acceptable under Hudson.

With respect to Local 1000's requirement that employees state their social security numbers in their objections, Local 1000 argues that the requirement "constitutes a reasonable precaution to insure that one non-member's objection is not misattributed to another non-member." (Local 1000's Cross-Mot., Mem. at 25 (Docket No. 68).)  "With so many represented state employees," Local 1000 notes, "the likelihood is high that some will share the same name." (Id.) "The social security number,

---

[8] Other circuits have split over whether an annual objection requirement is permissible under Hudson. The Sixth and D.C. Circuits have found it to be permissible, see Tierney v. City of Toledo, 824 F.2d 1497, 1506 (6th Cir.1987); Abrams v. Communications Workers of America, 59 F.3d 1373, 1381-82 (D.C. Cir. 1995), while the Fifth Circuit has found it to be impermissible, see Shea v. Int'l Ass'n of Machinists & Aerospace Workers, 154 F.3d 508, 517 (5th Cir. 1998).

as a unique identifier, assists the union in attributing fee objections to the correct person." (Id.)

Plaintiffs have offered no evidence indicating that Local 1000's social security number requirement results in identity theft, or that employees are deterred from objecting because of that requirement. Local 1000, on the other hand, has offered evidence indicating that the requirement is reasonably necessary to guard against misattribution of objections, and that it "takes precautions to safeguard the confidentiality of . . . employees' SSNs" pursuant to federal and state law. (See Decl. of Anne Giese ¶¶ 10-11 (discussing need for social security numbers and precautionary measures taken) (Docket No. 71).)

In light of evidence indicating that Local 1000's social security number requirement is reasonably necessary to prevent misattribution of objections, and in the absence of evidence indicating that such requirement deters employees from objecting, the court finds that Local 1000's social security number requirement is acceptable under Hudson.

Having addressed each aspect of plaintiffs' constitutional challenge, the court finds that because Mitchell remains good law after Knox, and because Local 1000's opt-out requirements have been found by the Ninth Circuit or this court to be acceptable under Hudson, the court must deny plaintiffs' Motion and grant Local 1000's Cross-Motion.

IT IS THEREFORE ORDERED that plaintiffs' Motion for summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the California state controller's Cross-Motion for partial summary judgment, and Local

1000's Cross-Motion for summary judgment be, and the same hereby are, GRANTED.

The clerk is directed to enter judgment in favor of defendants and against plaintiffs.

Dated: February 8, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE