1  SCOTT A. KRONLAND (SBN 171693)
   JEFFREY B. DEMAIN (SBN 126715)
2  ERIC P. BROWN (SBN 284245)
   Altshuler Berzon LLP
3  177 Post Street, Suite 300
   San Francisco, California 94108
4  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
5  skronland@altshulerberzon.com
   jdemain@altshulerberzon.com
6  ebrown@altshulerberzon.com

7  ANNE M. GIESE (SBN 143934)
   SEIU Local 1000
8  1808 14th Street
   Sacramento, California 95811
9  Telephone: (916) 554-1279
   Facsimile: (916) 554-1292
10 agiese@seiu1000.org

11 Attorneys for Defendant
   Service Employees International Union, Local 1000
12

13                    IN THE UNITED STATES DISTRICT COURT

14                   FOR THE EASTERN DISTRICT OF CALIFORNIA

15

16 KOUROSH KENNETH HAMIDI, et al., AND )   No. 2:14-cv-00319-WBS-KJN
17 THE CLASS THEY SEEK TO REPRESENT,   )
                                       )   **REPLY MEMORANDUM IN SUPPORT OF
18         Plaintiffs,                 )   DEFENDANT SEIU LOCAL 1000'S MOTION
                                       )   TO DISMISS PLAINTIFFS' CLAIMS FOR
19    v.                               )   PROSPECTIVE INJUNCTIVE AND
                                       )   DECLARATORY RELIEF AS MOOT**
20 SERVICE EMPLOYEES INTERNATIONAL     )
   UNION, LOCAL 1000, et al.,          )   Fed. R. Civ. P. 12(h)(3)
21                                     )
           Defendants.                 )   Hearing Date: June 17, 2019
22                                     )   Time:         1:30 p.m.
                                       )   Courtroom:    5
23                                         Judge:        Hon. William B. Shubb

Defendant Service Employees International Union, Local 1000 ("Local 1000") hereby respectfully submits this reply in support of its motion for an order dismissing as moot the claims for prospective injunctive and declaratory relief brought by Plaintiffs Kourosh Kenneth Hamidi, *et al.* ("Plaintiffs") in the above-captioned case, pursuant to Federal Rule of Civil Procedure 12(h)(3). Although dripping with rhetoric and invective, Plaintiffs' opposition to Local 1000's motion, Docket No. 130 ("Opp."), lacks pertinent authority or persuasive reasoning, and Plaintiffs' arguments should be rejected for the following reasons.

1. Although Plaintiffs recognize that Local 1000's motion to dismiss goes only to their claims for prospective injunctive and declaratory relief, *see* Opp. at 2 ("Local 1000 seeks only to dismiss as moot the Employees' claims for prospective injunctive and declaratory relief, and as such, is only a motion for partial dismissal"), elsewhere they appear to argue that Local 1000's motion seeks the dismissal of the entire case as moot, *see id.* at 7 (Defendants' "argument boils down to the unlikely proposition that granting some of the relief sought by the Employees – cessation of illegal fee seizures – moots the case in its entirety.") (emphasis omitted). That is not only wrong but plainly unfounded. Local 1000's motion is entitled a "Motion to Dismiss Plaintiffs' Claims for Prospective Injunctive and Declaratory Relief as Moot." Docket Nos. 121 at 1, 122 at 1. Moreover, as Local 1000's opening brief explained, "Local 1000 does not contend that Plaintiffs' claim for retrospective monetary relief is moot. That claim remains pending and will be addressed in a future round of motions." Local 1000's Opening Brief ("Opening Brf."), Docket No. 122, at 6 n.3.

Local 1000's motion clearly seeks dismissal on mootness grounds only of Plaintiffs' claims for prospective injunctive and declaratory relief, not of "the case in its entirety." Opp. at 7. Plaintiffs may be attempting to argue that mootness cannot be assessed claim-by-claim, and that because their claim for retrospective monetary relief is not moot, their claim for prospective declaratory relief cannot be moot. If so, that argument is rebutted both by their concession that their injunction claim is moot and by the clear law, cited in our opening brief, that Plaintiffs must establish Article III jurisdiction for each form of relief they seek. *Davis v. FEC*, 554 U.S. 724, 733-34 (2008).

2. Plaintiffs admit that Local 1000 has stated the correct legal standard for assessing the mootness of their claims for prospective relief. Opp. at 3 n.4. They also admit that their claim for

injunctive relief is moot: "[Defendants'] cessation of their practice of seizing from nonmembers (*i.e.,* the Employees) *any* fees renders the Employees' claim for injunctive relief well and thoroughly moot." *Id*. at 4; *see also id.* at 2 n.3. Although they contend that their claim for declaratory relief is not moot, *see id.* at 4, they fail to present any persuasive argument for distinguishing their two claims for prospective relief as to the mootness issue, that is, to explain why their claim for declaratory relief is not moot, given their admission that their injunctive relief claim is moot.

3. Plaintiffs argue that the Supreme Court's decision in *Janus v. AFSCME, Council 31*, 585 U.S. ___, 138 S. Ct. 2448 (2018), is "fully retroactive." Opp. at 5. Although Local 1000 disagrees, that dispute is of no moment to its motion to dismiss. The retroactivity question might be relevant to the merits of Plaintiffs' claim for declaratory relief, but it is not relevant to the question of mootness, and only the latter is currently presented in this case. Indeed, for the purpose only of its motion to dismiss as moot, Local 1000 will assume that *Janus* is retroactive. Plaintiffs' argument as to retroactivity nonetheless fails because Plaintiffs fail to show how it makes any difference to the mootness question. In short, since Plaintiffs admit that all fee collection fully and completely terminated upon the issuance of *Janus*, they have not shown how a declaration by this Court that Local 1000's use of the opt-out system in collecting pre-*Janus* fair share fees was unconstitutional can be anything more than a purely advisory opinion, with no effect on the legal rights or obligations of the parties going forward.

4. In our opening brief, we cited eight decisions in which district courts have dismissed as moot claims for prospective relief against fair share fee collection due to the termination of that collection in the wake of *Janus*. *See* Opening Brief at 6. Since the filing of our opening brief, five more cases have reached the same conclusion: *Hartnett v. Pennsylvania State Education Ass'n*, 2019 WL 2160404 at *6-*7 (M.D. Pa. May 17, 2019); *Babb v. California Teachers Ass'n*, 2019 WL 2022222 (C.D. Cal. May 8, 2019); *Wholean v. CSEA SEIU Local 2001*, 2019 WL 1873021, at *2-*3 (D. Conn. April 26, 2019); *Akers v. Md. State Educ. Ass'n*, 2019 WL 1745980, at *4-*5 (D. Md. April 18, 2019); and *Bermudez v. Service Employees Int'l Union, Local 521*, 2019 WL 1615414, at *1 (N.D.

Cal. April 16, 2019). Plaintiffs' only response to this unbroken consensus is that these cases were "filed subsequent to *Janus*,"[1] and thus "[n]one were, as here, a longstanding case vigorously defended by the union at issue . . . ." Opp. at 7 n.9. Why this distinction should make any difference remains unexplained. Plaintiffs cite no authority holding that the age of the claim at issue has any bearing on whether subsequent events have rendered it moot, or that claims can be saved from mootness by vigorous litigation prior to the occurrence of such events.

5. Plaintiffs admit that Local 1000 "initiated termination" of fair share fee collection and that the State Controller "took great care to follow those directives," with the result that fee collection "ceased immediately after *Janus* was decided." Opp. at 1. Plaintiffs take Defendants' prompt action to conform their conduct to the Supreme Court's change in the law and attempt to spin it into a nefarious plot to "evade further liability for violating nonmembers' constitutional rights." *Id*. Plaintiffs then attempt to invoke the "voluntary cessation" exception to the mootness doctrine, *id*. at 8-9, predicating that argument on Defendants' continued use of the challenged opt-out system "long after [this] suit was filed," Opp. at 7. However, this *undermines*, rather than supports, Plaintiffs' voluntary cessation argument.

As we showed in our opening brief, the voluntary cessation exception applies only when the challenged conduct ceases *because of the lawsuit in which the conduct is challenged*, and not – as here – because of another ruling, by another court, in another case that changes the applicable law. *See* Opening Brf. at 8-9 (citing *Smith v. Univ. of Wash.*, 233 F.3d 1188, 1194-95 (9th Cir.2000); *Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998); *Public Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996); *Tarhuni v. Lynch*, 129 F. Supp. 3d 1052, 1061 (D. Or. 2015), *rev'd on other grounds sub nom. Tarhuni v. Sessions*, 692 Fed. App'x 477 (9th Cir. 2017)). Where defendants cease their challenged conduct for other reasons, such as here to conform their conduct to changes in law

---

[1] As a factual matter, this assertion is erroneous. For example, *Danielson v. Inslee*, 345 F. Supp. 3d 1336 (W.D. Wash. 2018), was filed on March 15, 2018, more than three months before *Janus* issued on June 28, 2018, *see id.* at 1337, and *Yohn v. Cal. Teachers Ass'n*, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018), was filed on February 6, 2017, nearly a year and half before *Janus* issued, *see id.* at *1.

emanating from other cases, the "cessation" of the challenged conduct is not "voluntary" within the meaning of the voluntary cessation doctrine because it is compelled by law, not by a party altering its conduct to escape liability in the case in which that conduct was challenged. *Id.* Contrary to Plaintiffs' argument, the fact that Defendants continued to use the opt-out system to collect fair share fees for years after this case was filed, and only ceased doing so as a consequence of their termination of *all* fee collection immediately after *Janus* issued, rebuts application of the voluntary cessation exception rather than confirms it.

Indeed, as we also showed in our opening brief, courts facing post-*Janus* claims have rejected the voluntary cessation exception, and have dismissed claims for prospective relief as moot, on this very basis. *See* Opening Brief at 9-10; *Lamberty v. Connecticut State Police Union*, 2018 WL 5115559, at *8-*9 (D. Conn. Oct. 19, 2018) (for purposes of mootness, "there was nothing voluntary about" defendants' cessation of fair share fee collection in response to *Janus*, "the Supreme Court's new and controlling precedent [which] not only affected the rights of the parties immediately before it (the state of Illinois) but also announced a broad rule invalidating every state law permitting agency fees to be withheld"); *Lee v. Ohio Education Ass'n*, 2019 WL 1323622, at *1 (N.D. Ohio March 25, 2019) (same; quoting *Lamberty*); *Yohn v. California Teachers Ass'n*, 2018 WL 5264076, at *3 (C.D. Cal. Sept. 28, 2018) ("Defendants are obviously changing their behavior because of the holding in *Janus* and not because of this lawsuit.").

6. Even if Defendants' abandonment of the opt-out system were "voluntary" within the meaning of the voluntary cessation doctrine, Plaintiffs' declaratory relief claim would still have to be dismissed because voluntary cessation does *not* save claims from mootness where there is "'no reasonable expectation that the challenged practices . . . will be reinstated.'" *Smith*, 233 F.3d at 1194 (quoting *Martinez v. Wilson*, 32 F.3d 1415, 1420 (9th Cir. 1994)) (some internal quotation marks omitted); *see also* Opp. at 7 ("Voluntary cessation will only moot a case if 'there is no reasonable expectation that the wrong will be repeated.'") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Here, there is no such "reasonable expectation;" Plaintiffs' argument to the contrary reads the "reasonable expectation" language out of the legal standard and relies solely on unreasonable speculation that the challenged conduct could be resumed. *See* Opp. at 8.

**Reply Mem. iso Def. SEIU Local 1000's Motion to Dismiss Pls' Claims for Prosp. Inj. and Decl. Relief as Moot**
*Hamidi, et al. v. SEIU Local 1000, et al.*, Case No. 2:14-cv-00319-WBS-KJN                                                                                             4

1       Plaintiffs object that the provisions of the Dills Act that permit the collection of fair share fees
2 are still on the books and that the relevant collective bargaining agreement still contains a fair share fee
3 provision. *See* Opp. at 9-10 & n.11. Plaintiffs undermine their own argument, however, by pointing to
4 authority holding that even the repeal of a law in response to litigation does not necessarily moot a
5 claim because the law can always be reenacted after the litigation is dismissed. *See* Opp. at 9 (quoting
6 *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)). That authority demonstrates that the
7 repeal, *vel non*, of challenged statutory or contractual provisions is not determinative of the voluntary
8 cessation inquiry.[2] Rather, what is determinative is whether there is any "*reasonable* expectation that
9 the challenged practices . . . *will* be reinstated." *Smith*, 233 F.3d at 1194 (internal quotations omitted;
10 emphasis added). Plaintiffs simply ignore the settled law that "[t]he mere presence on the statute
11 books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement,
12 does not entitle anyone to sue . . . ." *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006); *see also,*
13 *e.g.*, *Wisconsin Right to Life v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004) ("[A] case is moot when a
14 state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional, in
15 spite of the failure of the legislature to remove the statute from the books.").

16       In our opening brief, we demonstrated that there is no reasonable expectation that fair share fee
17 collection will resume (with or without the opt-out system), and cited numerous decisions reaching that
18 very conclusion and therefore dismissing as moot claims seeking prospective relief against fee
19 collection that ceased with *Janus*. *See* Opening Brf. at 10-12. Unable to cite even one contrary
20 decision, Plaintiffs instead rely on a potpourri of decisions that arose in different factual contexts and
21 have no application here.

22       First, a number of those cases are inapposite because the defendants ceased the challenged
23 conduct in response to the very litigation in which mootness was asserted, not (as here) in response to a

---

[2] *City of Mesquite* holds that repeal of a law may moot a claim but does not necessarily do so. *Id*. at 289; *accord Rosebrock v. Mathis*, 745 F.3d 963, 971-72 (9th Cir. 2014) (cited in Opp. at 10). Neither of these decisions supports the converse argument that the mere existence on the books of a law indistinguishable from a law that has been held unconstitutional in a different case necessarily *precludes* mootness. And, as discussed above, the settled law is to the contrary.

**Reply Mem. iso Def. SEIU Local 1000's Motion to Dismiss Pls' Claims for Prosp. Inj. and Decl. Relief as Moot**
*Hamidi, et al. v. SEIU Local 1000, et al.*, Case No. 2:14-cv-00319-WBS-KJN     5

change in law from an entirely different case to which the defendants were not party. *See Knox v. California State Employees Ass'n, Local 1000*, 567 U.S. 298, 307-08 (2012); *DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008); *City of Mesquite*, 455 U.S. at 289; *United States v. Gov't of the Virgin Islands*, 363 F.3d 276, 284-86 (3d Cir. 2004); *Dow Chem. Co. v. United States EPA*, 605 F.2d 673, 678-80 (3d Cir. 1979).

Second, several of the same cases are also inapposite because, notwithstanding the cessation of the challenged conduct, defendants persisted in defending the continued lawfulness of that conduct, i.e., maintained their "substantive stance," thereby suggesting they might resume it. *See Knox*, 567 U.S. at 307-08; *DeJohn*, 537 F.3d at 309-11; *Gov't of the Virgin Islands*, 363 F.3d at 284-86; *Dow Chem. Co.*, 605 F.2d at 678-80. Here, in contrast, both Defendants have been forthright that *Janus* prohibits the continued collection of *any* fair share fees, much less the collection of such fees through the challenged opt-out system, and have ceased any effort to defend the constitutionality of that system *in futuro*.[3]

Third, Plaintiffs cite two cases for the proposition that a declaratory judgment constitutes prospective relief: *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 31 (2010); *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 676 n.6 (2010). Local 1000 takes no issue with that proposition, but no party in either case argued that the declaratory relief claim was moot. Here, Plaintiffs' declaratory relief claim is moot precisely *because* it is a claim for prospective relief, and the circumstance as to which it seeks relief – the collection of fair share fees pursuant to the opt-out system – no longer exists.

Fourth, Plaintiffs cite Justice O'Connor's concurring opinion in *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 585 (1984), for the proposition that "collateral effects" of a dispute that "continue to affect the relationship of litigants" can prevent mootness. Opp. at 12. They fail to demonstrate the continued existence of any such collateral effects here, however, in light of the

---

[3] *Marin-Rodriguez v. Holder*, 612 F.3d 591, 596 (7th Cir. 2010), cited in Opp. at 12, is not a voluntary cessation case, but also involved the situation in which the defendant persisted in defending the lawfulness of the challenged conduct. *Simmons v. United Mortg. & Loan Investment, LLC*, 634 F.3d 754, 767 (4th Cir. 2011), cited in Opp. at 13, is even further afield, as it held only that a conditional settlement offer for less than all of the monetary relief sought by a plaintiff will not moot a damages claim.

**Reply Mem. iso Def. SEIU Local 1000's Motion to Dismiss Pls' Claims for Prosp. Inj. and Decl. Relief as Moot**
*Hamidi, et al. v. SEIU Local 1000, et al.*, Case No. 2:14-cv-00319-WBS-KJN    6

complete cessation of fee collection, and instead merely point to the speculative possibility that fee collection could resume at some future unspecified time for some unspecified reason. *Id*.

Finally, the Supreme Court's decision in *Super Tire Eng'g v. McCorkle*, 416 U.S. 115 (1974), cited in Opp. at 12, supports Local 1000's position that Plaintiffs' declaratory relief claim is moot, rather than Plaintiffs' position that that claim remains viable. There, the Supreme Court confronted a legal challenge, brought by an employer whose employees had gone out on strike, to a state statute rendering strikers eligible for financial assistance through state welfare benefits. The Court held that the employer's claim for declaratory relief was not moot, notwithstanding that the strike (and thus the strikers' access to such benefits) had terminated while the case was still pending before the district court. In so holding, the Court distinguished two prior decisions that had held moot declaratory relief claims against a state law permitting the governor to seize a public utility in the event of a strike that interfered with the public interest, where both the seizure and the strike had terminated prior to the time the case reached the Supreme Court. *Id*. at 122 (citing *Oil Workers Unions v. Missouri*, 361 U.S. 363 (1960), and *Harris v. Battle*, 348 U.S. 803 (1954)). The Court's explanation of the difference between those prior cases and the case before it make clear that Plaintiffs' declaratory relief claim in the present case is moot:

> The seizure was not automatic for every public utility labor dispute. It took effect only upon the exercise of the Governor's discretion. In each case the Court held the controversy to be moot because both the seizure and the strike had terminated prior to the time the case reached this Court. The governmental action challenged was the authority to seize the public utility, and it was clear that a seizure would not recur except in circumstances where (a) there was another strike or stoppage, and (b) in the judgment of the Governor, the public interest required it. The question was thus posed in a situation where the threat of governmental action was two steps removed from reality. This made the recurrence of a seizure so remote and speculative that there was no tangible prejudice to the existing interests of the parties and, therefore, there was a "want of a subject matter" on which any judgment of this Court could operate. *Oil Workers*, 361 U.S., at 371.

*Super Tire Eng'g*, 416 U.S. at 122-23. In contrast, the Court noted that the case before was not moot because the state's challenged policy holding strikers eligible for welfare benefits was "fixed and definite," and "not contingent upon executive discretion." *Id*. at 124.

If the recurrence of the challenged conduct in *Oil Workers Unions* and *Harris* was "two steps removed from reality," *id*. at 123, because it depended on two separate, discretionary contingencies,

**Reply Mem. iso Def. SEIU Local 1000's Motion to Dismiss Pls' Claims for Prosp. Inj. and Decl. Relief as Moot**
*Hamidi, et al. v. SEIU Local 1000, et al.*, Case No. 2:14-cv-00319-WBS-KJN        7

then recurrence of the challenged conduct in the present case is *three* steps removed from reality: for it to recur, (1) the State Controller would have to decide to resume fair share fee deductions; (2) Local 1000 would have to provide the Controller with the necessary payroll information to permit the deductions to be made and then would have to accept the fee deductions remitted by the Controller; and (3) both Defendants would not just have to resume fee collection but would have to use the challenged opt-out system in so doing. In the final analysis, the mootness question comes down to whether, in light of the Supreme Court's overturning of decades of clear law in *Janus*, Defendants' express recognition of *Janus*'s applicability to their fee collection, and their swift, unequivocal, and continuing compliance with *Janus*'s prohibition, this Court has a *reasonable* expectation that all three of those steps *will* occur. *See, e.g., Smith*, 233 F.3d at 1194. Merely to pose the question is to answer it: there cannot be any such reasonable expectation, but only unfounded speculation.

Nothing in Plaintiffs' Opposition undermines the Western District of Washington's conclusion that because "*Janus* was . . . the catalyst for [the union's] new policy, . . . . it would be highly illogical for [the union] to revert its practices back to their pre-*Janus* state," especially since "[t]o do so would be inviting litigation by directly violating a constitutional decree." *Carey v. Inslee*, 2019 WL 1115259, at *4 (W.D. Wash. March 11, 2019); *accord Yohn*, 2018 WL 5264076, at *4 ("Further, given that, prior to *Janus*, Defendants were merely following the 40-year-precedent of *Abood*, the Court sees no reason to doubt that Defendants will follow *Janus* as well."). This Court should reach the same conclusion as every other court that has examined this question and dismiss Plaintiffs' prospective relief claims as moot.

Dated:  May 30, 2019.                         Respectfully submitted,

                                              SCOTT A. KRONLAND
                                              JEFFREY B. DEMAIN
                                              ERIC P. BROWN
                                              Altshuler Berzon LLP

                                              ANNE M. GIESE
                                              SEIU Local 1000

                                              By:    */s/ Jeffrey B. Demain*
                                                        Jeffrey B. Demain

                                              Attorneys for Defendant Service Employees
                                              International Union, Local 1000

**Reply Mem. iso Def. SEIU Local 1000's Motion to Dismiss Pls' Claims for Prosp. Inj. and Decl. Relief as Moot**
*Hamidi, et al. v. SEIU Local 1000, et al.*, Case No. 2:14-cv-00319-WBS-KJN                                              8