UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KOUROSH HAMIDI, et al., and the CLASS THEY SEEK TO REPRESENT,<br><br>    Plaintiffs,<br><br>    v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 1000, and BETTY YEE, California State Controller,<br><br>    Defendants. | No. 2:14-cv-319 WBS KJN<br><br><br><br><br><br><br>MEMORANDUM & ORDER |

----oo0oo----

Fifteen employees of the State of California brought this class action against defendants Service Employers International Union Local 1000 and the California state controller, alleging that defendants' 'opt-out' system for collecting optional union fees violates the First Amendment.

1

(Compl. (Docket No. 1).) On remand from the Ninth Circuit, defendants move to dismiss plaintiffs' claims for prospective relief. (Docket Nos. 121 & 127.) Plaintiffs move to reopen discovery. (Docket No. 126.)

I. Background

This court described much of the factual and procedural background to this lawsuit in its prior order on summary judgment. (Mem. & Order Re: Cross-Mots. for Summ. J. ("Summ. J. Order") (Docket No. 94).) After the court entered judgment in favor of defendants, plaintiffs filed a notice of appeal. (Docket No. 102.) After the parties had filed their briefs on appeal, the Supreme Court issued its decision in Janus v. American Federation of State, County, & Municipal Employees, 138 S. Ct. 2448 (2018).

Because the parties agreed that Janus impacts this case, the Ninth Circuit then vacated this court's judgment and remanded the case for further proceedings in light of the Supreme Court's decision. (Ninth Cir. Mem. at 2 (Docket No. 111).) The panel also noted that this court "may determine in the first instance whether any of [plaintiffs'] claims are moot." (Id.) Pursuant to the discussion with the parties at the status conference on remand, the court set a briefing schedule for the two motions at issue in this order: (1) defendants' motion to dismiss plaintiffs' claims for prospective relief as moot and (2) plaintiffs' motion to reopen discovery on the affirmative defense of good faith. (Docket No. 118.) The court held a hearing on these motions on June 17, 2019.

II. Defendants' Motions to Dismiss

    A. Legal Standard

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The difference between a Rule 12(h)(3) motion and a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 880 n.3 (3d Cir. 1992); see also Augustine v. United States, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) (stating that the issue of subject-matter jurisdiction may be raised by the parties at any time pursuant to Rule 12(h)(3)); Johnson v. Cal. Welding Supply, Inc., No. 2:11-cv-01669 WBS GGH, 2011 WL 5118599, at *2 (E.D. Cal. Oct. 27, 2011) (applying a single standard to a motion to dismiss pursuant to Rules 12(b)(1) and 12(h)(3)).

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed once the court determines that it lacks subject-matter jurisdiction to adjudicate the claims. Fed. R. Civ. P. 12(b)(1). The court presumes that it has no jurisdiction until the party asserting jurisdiction proves otherwise, and once subject-matter jurisdiction has been challenged, the burden of proof is placed on the party asserting that jurisdiction exists. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 376 (1994); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke

the court's jurisdiction bears the burden of establishing that jurisdiction exists").

An attack on the court's subject-matter jurisdiction may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). As is the case here where defendants bring a factual challenge to the court's subject-matter jurisdiction, this court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. The court "need not presume the truthfulness of plaintiffs' allegations," White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000), and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction," McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

B. Mootness

Under Article III of the U.S. Constitution, the judicial power extends to "Cases" and "Controversies." Courts cannot decide legal disputes "in the absence of such a case or controversy." Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013). No principle is more fundamental to the judiciary's proper role in the federal system. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). This limitation requires that plaintiffs have standing, that is "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). Article III necessitates that an actual controversy exist "through all stages of the litigation." Already, LLC, 568 U.S. at 91 (quotations omitted). "A case becomes moot--and therefore

no longer a 'Case' or 'Controversy' for purposes of Article III--when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Id. Put another way, a case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." Alvarez v. Smith, 558 U.S. 87, 93 (2009).

Defendants contend that the Supreme Court's decision in Janus and subsequent actions taken by the state and the union have mooted plaintiffs' claims for prospective relief. In Janus, the Supreme Court held that states and public-sector unions cannot compel the payment of agency fees from nonconsenting employees because such a practice violates the First Amendment. 138 S. Ct. at 2486. On June 28, 2018, the day after Janus was decided, the California State Controller's Office cancelled the deduction of agency fees from all nonconsenting public employees. (See State Controller's Req. for Judicial Notice Ex. 1 (Docket No. 128-1).) The Controller's Office also said that it would refund all June 2018 agency fees. (Id.) About a month later, the California Attorney General issued an advisory concerning the Supreme Court's decision in Janus, explaining that the state "may no longer automatically deduct a mandatory agency fee from the salary or wages of a non-member public employee who does not affirmatively choose to financially support the union." (See State Controller's Req. for Judicial Notice Ex. 2 (Docket No. 128-2).)[1] Similarly, in-house counsel for the union defendant

---

[1] The court GRANTS the state controller's unopposed request for judicial notice of Exhibit 1, the Personnel Letter issued by State Controller's Office on July 20, 2018, and Exhibit 2, California Attorney General Xavier Becerra's advisory on labor

has filed an affidavit stating that the union ceased collecting agency fees and using the opt-out procedure following Janus. (See Decl. of Anne M. Giese ("Giese Decl.") ¶¶ 3, 8; see also id. Exs. 1 & 2 (Docket No. 124).) Union counsel agrees that the entire practice is unconstitutional in light of Janus and that this determination binds the union. (Giese Decl. ¶ 8.)

Plaintiffs, inter alia, ask for declaratory and injunctive relief against the opt-out procedure defendants used to collect optional union dues. (See Compl. at 13-14.) Because defendants have abandoned this procedure because they can no longer collect union dues without an employees' affirmative consent, see Janus, 138 S. Ct. at 2448, they maintain that these claims for relief are now moot. In response, plaintiffs concede that their claim for injunctive relief is now moot (see Pls.' Consolidated Opp'n at 2 n.3 & 4 (Docket No. 130)), but they insist that this change in policy does not render their claim for declaratory relief moot.[2]

1. Applicability of the Voluntary Cessation Exception

At the outset, the court must decide whether the challenged conduct ended due to defendants' "voluntary cessation"

---

rights, since they are "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (Federal courts "may take judicial notice of a record of a state agency not subject to reasonable dispute.").

[2] The test for mootness is "not relaxed in the declaratory judgment context." Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). Plaintiffs must still "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (citations and quotations omitted).

6

of collecting fees. "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." Knox v. Serv. Employees Int'l Union, 567 U.S. 298, 307 (2012). Under Ninth Circuit precedent, "voluntary cessation must have arisen because of the litigation" for this exception to mootness to apply. Pub. Utilities Comm'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1460 (9th Cir. 1996) (emphasis in original).

All available evidence indicates that defendants changed their position, not because of this lawsuit, but because the Supreme Court's decision in Janus rendered the collection of union dues from nonconsenting public employees unconstitutional. Defendants cited Janus as the justification for their change in policy, and the timing of the change indicates that the decision was a significant motivating force. (See State Controller's Req. for Judicial Notice Ex. 1; Decl. of Anne M. Giese ¶ 3.) Indeed, defendants vigorously defended against this lawsuit and employed the opt-out procedure up until Janus. Therefore, the real motivating factor behind the change "tends to indicate that the change was not really voluntary at all." See Smith v. Univ. of Wash. Law Sch., 233 F.3d 1188, 1194 (9th Cir. 2000). The Supreme Court's broad new precedent "not only affected the rights of the parties immediately before it (the state of Illinois) but also announced a broad rule invalidating every state law permitting agency fees to be withheld." Lamberty v. Conn. State Police Union, No. 3:15-CV-378 (VAB), 2018 WL 5115559, at *9 (D. Conn. Oct. 19, 2018). Because defendants' decision to abandon the

challenged conduct did not arise because of this litigation, the court finds that the voluntary cessation rubric does not apply, and thus that there is no longer a dispute between the parties as to the claims for prospective relief.

### 2. Applying the Voluntary Cessation Exception

Even if the voluntary cessation exception were to apply, a claim may still be moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (citations and quotations omitted). Where a policy change is not reflected in statutory changes or changes in ordinances or regulations, as is conceded here, mootness is "more likely" if: (1) language indicating the change is "broad in scope and unequivocal in tone"; (2) the policy fully addresses the challenged conduct; (3) the case in question was the catalyst for the change in policy; (4) the new policy has been in place for a long time; and (5) since implementing the new policy, defendants have not engaged in conduct similar to that being challenged in the present litigation. Rosebrock v. Mathis, 745 F.3d 963, 972 (9th Cir. 2014) (citations and quotations omitted). On the other hand, mootness is less likely where the new policy could be easily abandoned or changed in the future. Id. The parties asserting mootness based on voluntary cessation bear a heavy burden in satisfying this standard. Id.

Weighing the Rosebrock factors, the court determines

that defendants have carried this heavy burden.[3]  First, the California Attorney General has clearly indicated that the state may no longer collect fees from employees who do not "affirmatively choose to financially support the union."  (See State Controller's Req. for Judicial Notice Ex. 2.)  Nothing in this statement, the letter from the State Controller's Office, or the affidavit submitted by the union's counsel is tentative.  Second, the new practice fully addresses the challenged conduct.  Because defendants no longer collect any fees absent an employee's affirmative consent, they no longer use the opt-out system at issue in this case.  Third, as explained above, the Janus decision, not this litigation, catalyzed the change in policy.  Regardless, the parties agree that Janus squarely applies to this lawsuit.  And finally, under the fourth and fifth factors, the change in policy occurred almost a year ago and there is no indication that defendants have employed the challenge opt-out system in that time.[4]

---

[3]  This conclusion aligns with other district courts that have found similar claims for prospective relief moot after Janus.  See, e.g., Hartnett v. Pa. State Educ. Ass'n, No. 1:17-CV-100, 2019 WL 2160404, at *7 (M.D. Pa. May 17, 2019); Wholean v. CSEA SEIU Local 2001, No. 3:18-CV-1008 (WWE), 2019 WL 1873021, at *2 (D. Conn. Apr. 26, 2019); Carey v. Inslee, 364 F. Supp. 3d 1220, 1226-27 (W.D. Wash. 2019); Cook v. Brown, 364 F. Supp. 3d 1184, 1189-90 (D. Or. 2019); Lamberty, 2018 WL 5115559, at *7-*9; Yohn v. Cal. Teachers Ass'n, No. 17-cv-202-JLS-DFM, 2018 WL 5264076, at *3-*4 (C.D. Cal. Sept. 28, 2018); Danielson v. Inslee, 345 F. Supp. 3d 1336, 1339-40 (W.D. Wash. 2018).

[4]  The weighing of the Rosebrock factors distinguishes this case from Guppy v. City of Los Angeles, No. SA 18-cv-360 JVS(ADSx) (C.D. Cal. June 5, 2019) (Docket No. 67).  In Guppy, the defendants continued to automatically deduct agency fees from plaintiff's wages even after the Supreme Court's decision in

9

1          3.   Plaintiffs' Remaining Arguments

It is true that the provisions of California law that authorize the opt-out procedure and the collection of agency fees remain on the books. See, e.g., Cal. Gov't Code §§ 3513(i) & (k), 3515, 3515.7 & 3515.8. However, this court is unaware of any authority that requires that the challenged statute be repealed before a claim for declaratory relief can be considered moot. See Manbeck v. Colvin, No. 15-CV-2132 (VB), 2016 WL 29631, at *5 (S.D.N.Y. Jan. 4, 2016) (same). As some circuits have held, "[t]he mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue." Winsness v. Yocom, 433 F.3d 727, 732 (10th Cir. 2006); see also Wis. Right to Life, Inc. v. Schober, 366 F.3d 485, 492 (7th Cir. 2004) ("[A] case is moot when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional, in spite of the failure of the legislature to remove the statute from the books."). It is not the job of this court to "provide a belt-and-suspenders opinion on a downstream controversy." See Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010). Declaring that these provisions of California law are no longer constitutional "would simply reiterate a fact that is not in dispute." Id. Janus has "eviscerated the dispute that prompted [plaintiffs'] . . . request for declaratory relief," see

---

Janus. (Id. at 3.) Only after the plaintiff brought a lawsuit did the defendants in Guppy stop these deductions. (See id. at 4.) By contrast, defendants in this case immediately stopped collecting agency fees after Janus and readily acknowledged that the Supreme Court's decision now prohibits the challenged conduct.

10

Gator.com, 398 F.3d at 1131, because defendants concede that the decision renders any statutory authorization unconstitutional.

Finally, the court rejects plaintiffs' argument that the union's supposed record of changing its behavior to evade judicial review is sufficient to overcome mootness. Unlike in Knox, the union does not continue to defend the legality of the challenged practice. See 567 U.S. at 307 (observing that it was "not clear why the union would necessarily refrain from collecting similar fees in the future" when it continued to "defend the legality" of the practice). "It is unreasonable to think that the Union would resort to conduct that it had admitted in writing was constitutionally deficient." See Carlson v. United Acads., 265 F.3d 778, 786 (9th Cir. 2001); see also Cummings v. Connell, 316 F.3d 886, 898 (9th Cir. 2003) (same). And contrasted with this case, the change in position in Knox was not motivated by a directly applicable Supreme Court decision.

Even if the union's past conduct was relevant, plaintiffs concede that the union has no power to compel the payment of fees absent approval by the state controller. (See Pls.' Consolidated Opp'n at 13-14; see also Giese Decl. ¶ 9 ("Local 1000 has no authority or practical means of deducting fair share fees from state employees' pay, as their pay is administered by the State of California through the [State Controller's Office], not by Local 1000.").) Here, the state has unequivocally indicated that it will no longer employ the opt-out procedure and collect fees. (See State Controller's Req. for Judicial Notice Exs. 1 & 2.) And this court must "presume that a government entity is acting in good faith when it changes its

policy." Rosebrock, 745 F.3d at 971. Plaintiffs have not put forth any legitimate reason for why the state would otherwise deviate from this stated policy, and thus has not overcome this presumption of good faith.

Accordingly, because the allegedly wrongful behavior could not reasonably be expected to recur, the court will dismiss plaintiffs' claims for prospective relief as moot.

Plaintiffs previously conceded, and this court so held, that "they are barred from recovering monetary damages against the state controller under the doctrine of sovereign immunity." (Summ. J. Order at 6 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).) The court sees no reason to upset this prior holding. Accordingly, because plaintiffs have no claims remaining against the state controller, the court will dismiss the state controller from this lawsuit.

III. Plaintiffs' Motion to Reopen Discovery

A. Legal Standard

A moving party must show good cause to modify a scheduling order. See Fed. R. Civ. P. 16(b)(4). In applying this good cause standard to a motion to reopen discovery, this court may examine the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

U.S. ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1526 (9th Cir. 1995), vacated on other grounds, 520 U.S. 939 (1997).

However, the good cause inquiry "primarily considers the diligence of the party seeking the amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). If the movant did not act diligently, the court's "inquiry should end." Id.

  B. Analysis

    Plaintiffs seek to reopen discovery on the union defendant's good faith defense. The union raised this affirmative defense in its answer filed on April 25, 2014. (Answer at 15 (Docket No. 18).) And this court set a discovery deadline of June 1, 2015 in the Rule 16 scheduling order. (Docket No. 21.)

    The court resolves this motion solely under the diligence factor. Although the union raised this affirmative defense in its answer, plaintiffs concede that they failed to satisfy the deadline for completion of discovery.[5] (See Pls.' Reply at 5 (Docket No. 136).) Plaintiffs had ample opportunity to conduct discovery, almost eleven months, yet they simply failed to diligently pursue evidence relevant to this affirmative defense. See Panatronic USA v. AT&T Corp., 287 F.3d 840, 846 (9th Cir. 2002) (holding that it is not an abuse of the district court's discretion to refuse to reopen discovery where the movant had "ample opportunity to conduct discovery" prior to its request to reopen). Such a failure to act, despite having proper notice,

---

[5] On May 25, 2015, plaintiffs served interrogatories and requests for production on the union. (See Decl. of Jeffrey Demain ¶ 2 (Docket No. 129-1).) The union then objected to the discovery as untimely and plaintiffs took no action to compel further responses. (See id.)

13

dooms plaintiffs' belated request.  The court is unaware of any authority that holds that the mere fact that an affirmative defense may have been buried among other affirmative defenses would otherwise excuse plaintiffs' failure to act diligently. Plaintiffs are the ones with the burden to prosecute their case properly.  Johnson, 975 F.2d at 610; see also Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1027 (9th Cir. 2006) ("The use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one.").

Plaintiffs argue, however, that the basis for the union's affirmative defense was unknown to them prior to the Supreme Court's decision in Janus, and thus they had no reason to anticipate this discovery need.  This argument fails because this affirmative defense remains largely unaffected by Janus.  The union's affirmative defense has remained constant throughout the lawsuit.  It has always argued that it followed then-applicable law when it collected agency fees.  (See Answer at 15.)  In fact, the parties briefed and argued the existence of a good faith defense on summary judgment, irrespective of the constitutionality of the challenged opt-out procedure.  (See Local 1000's Cross-Mot. for Summ. J. at 28-30 (Docket No. 68); Pls.' Corrected Consol. Resp. at 12-13 (Docket No. 87); Local 1000's Reply at 13-15 (Docket No. 88).)

Similarly, the authority plaintiffs rely on to argue that a good faith defense depends on the private defendant's

"subjective state of mind"[6] existed before plaintiffs brought this lawsuit. (See Pls.' Reply at 7 (citing Ambrose v. Coffey, 696 F. Supp. 2d 1119, 1139 (E.D. Cal. 2010) (Karlton, J.); Robinson v. City of San Bernardino Police Dep't, 992 F. Supp. 1198, 1207 (C.D. Cal. 1998)). The Ninth Circuit had also made it clear that a good faith defense may be available to private parties in 42 U.S.C. § 1983 actions. See Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). Therefore, existing case law gave plaintiffs ample notice of this defense and what may constitute relevant evidence. While plaintiffs argue that only a few courts discussed this defense in the context of public-sector union cases prior to Janus, Janus itself said nothing about the good faith defense, and thus cannot constitute a relevant change in the law for the purpose of renewed discovery.

Accordingly, because the contours of the union's affirmative defense and relevant case law have not changed since the outset of the litigation, plaintiffs' failure to diligently pursue discovery is not otherwise excused and the court will deny plaintiffs' motion to reopen discovery.

---

[6] Although the court does not decide this issue for the purposes of this motion, the court expresses skepticism that the good faith defense depends on more than the union's actual compliance with then-existing law. Predicating this defense "on the subjective anticipation of an unpredictable shift in the law undermines the importance of observing existing precedent." Danielson v. Am. Fed'n of State, Cty., & Mun. Employees, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018); see also Cook, 364 F. Supp. 3d at 1192 ("[R]eading the tea leaves of Supreme Court dicta has never been a precondition to good faith reliance on governing law.").

IT IS THEREFORE ORDERED THAT defendants' Motions to Dismiss (Docket Nos. 121 & 127) be, and the same hereby are, GRANTED. Plaintiffs' claims for injunctive and declaratory relief are DISMISSED as MOOT.[7] The court DISMISSES the California State Controller from this lawsuit WITH PREJUDICE.

IT IS FURTHER ORDERED THAT plaintiffs' Motion to Reopen Discovery (Docket No. 126) be, and the same hereby is, DENIED.

Dated: June 18, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7] At the hearing on these motions, counsel for plaintiffs framed the request for declaratory relief retrospectively, stating that it also includes a request for a declaration that defendant's conduct prior to Janus was illegal. As described, plaintiffs' request is not a free standing claim for declaratory relief. See Mendia v. Garcia, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016) (finding that claims for retrospective declaratory relief are often duplicative of claims for damages). Instead, it amounts to a motion for partial summary judgment on the issue of liability for plaintiffs' damages claim. Nothing within this order prevents plaintiffs from properly making such a motion later in this case.

16