UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KOUROSH KENNETH HAMIDI, et al., AND THE CLASS THEY SEEK TO REPRESENT,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 1000,<br><br>　　　　Defendant. | No. 2:14-cv-00319 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT, MOTION TO DECERTIFY THE CLASS, AND MOTION TO AMEND CLASS CERTIFICATION ORDER</u> |

----oo0oo----

　　　　Plaintiffs Kourosh Kenneth Hamidi et al., and the class they represent ("the Employees"), brought this class action against defendants Service Employees International Union Local 1000 ("Local 1000") and the California state controller,[1]

---

[1] After this court dismissed plaintiffs' claims for declaratory and injunctive relief, plaintiffs had no claims remaining against the state controller. The court thus dismissed the party from this lawsuit. (<u>See</u> June 18, 2019 Order at 16 (Docket No. 139).)

1

alleging that Local 1000's 'opt-out' system for collecting optional union fees violates the Employees' First Amendment rights. In light of the Supreme Court's recent decision in Janus v. AFSCME, Council 31, 138 S. Ct. 2448 (2018), requiring employees' affirmative consent prior to any collection of union fees, the court is now presented with the parties' cross-motions for summary judgment, defendant's motion to decertify the class, and plaintiffs' motion to amend the class certification order.

I. Factual and Procedural Background

On June 27, 2018, the Supreme Court decided Janus and held that payment to a union may not be collected from an employee without the employee's affirmative consent. 138 S. Ct. at 2486. The decision overruled Abood v. Detroit Board of Education, 431 U.S. 209 (1977), and its progeny, which established that unions may require nonmembers to pay a fee to the union that would be used to fund expenditures germane to collective bargaining.

Plaintiffs are employees of the State of California. (Local 1000 Resp. to Statement of Undisputed Material Facts ("SUMF") at 7, ¶ 6 (Docket No. 152-1).) Local 1000 is the exclusive representative for collective bargaining purposes of plaintiffs and other state employees. (Id. at 8, ¶ 8).

Before Janus, employees represented by Local 1000 could either join the union as dues-paying members (id. at 11, ¶ 12) or remain nonmembers and pay Local 1000 a 'fair share' fee. (Id. at 11, ¶ 12). Nonmembers could choose to pay the "full" fair share fee, which Local 1000 used to fund expenditures both germane and

not germane to collective bargaining, or a "reduced" fair share fee, which defendant used to fund only expenditures that were germane to collective bargaining. (See Decl. of Brian Calderia ("Caldeira Decl." ¶ 3 (Docket No. 37).) Non-germane expenditures, also known as non-chargeable expenditures, included, for example, contributions to "political or ideological causes only incidentally related to the terms and conditions of employment." (Local 1000 Resp. to SUMF at 12, ¶ 13 (Docket No. 152-1)).

Under that pre-Janus system, in deciding whether to charge a nonmember the full or reduced fair share fee, Local 1000 had, with the state's authorization and assistance, implemented an 'opt-out' system. (Id. at 3-4, ¶ 1). Prior to each annual fee cycle, Local 1000 sent nonmembers, a notice ("Hudson notice") informing them that they will be charged the full fair share fee for the upcoming cycle unless they opt out by sending back a written statement stating that they wish to be charged only the reduced fair share fee. (Local 1000 Resp. to SUMF at 11-12, ¶ 13.) Employees who did not object were charged the full fair share fee. (Pls.' Mot. in Sup. Summ. J. at 3-4 (Docket No. 149-1).) The day after Janus was decided, the California State Controller's Office cancelled the deduction of agency fees from all nonconsenting public employees. (See June 18, 2019 Order at 5 (Docket No. 139).)

On January 31, 2014, plaintiffs brought this action under 42 U.S.C. § 1983 alleging that Local 1000's fee collection system violated nonmembers' First and Fourteenth Amendment

3

rights. (Compl. at 1-2, ¶ 1 (Docket No. 1).) This court first certified plaintiff's cause of action for class treatment to the extent it is brought as a facial challenge to the constitutionality of Local 1000's opt-out requirement and procedure. (See May 22, 2015 Order at 3 n.3, 20 (Docket No. 53).) Then, evaluating Local 1000's fee collection system under pre-Janus precedent, this court granted summary judgment in favor of defendants and denied plaintiffs' challenge to the constitutionality of Local 1000's opt-out requirement. (See Feb. 8, 2017 Order at 14, 18 (Docket No. 94).) After the Court decided Janus, this court dismissed as moot plaintiffs' claims for declaratory and injunctive relief. (See June 18, 2019 Order at 16 (Docket No. 139).) Plaintiff's "sole remaining claim" is "for retrospective monetary relief." (Joint Status Report at 1 (Docket No. 143).)

II. Defendant's Motion for Summary Judgment

Plaintiff seeks repayment of all fees -- both germane and non-germane to collective bargaining -- collected from nonmembers prior to the Court's decision in Janus. (Pls.' Mot. in Supp. Summ. J. at 46 (Docket No. 149-1).) Defendant does not contest that Local 1000's opt-out system to collect agency fees from nonmembers violates nonmembers' First Amendment rights under Janus. Defendant instead asserts a good faith defense to § 1983 liability because the law at the time of Local 1000's collection of agency fees permitted such a system. This court agrees that such a defense applies here.

A. Section 1983 Good-Faith Defense

4

In Wyatt v. Cole, the Supreme Court did not foreclose "the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith." Wyatt v. Cole, 504 U.S. 158, 169 (1992); see also Richardson v. McKnight, 521 U.S. 399, 413-14 (1997) ("Wyatt explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense . . . we do not express a view on this last-mentioned question.").

The Supreme Court in Janus "itself did not specify whether the plaintiff was entitled to retrospective monetary relief for conduct the Supreme Court had authorized for the previous forty years." Cooley v. California Statewide Law Enf't Ass'n, 385 F. Supp. 3d 1077, 1081 (E.D. Cal. 2019) (citing Janus, 138 S. Ct. at 2486). The controlling law in the Ninth Circuit, however, recognizes a good faith defense in shielding private defendants from liability in § 1983 actions. In Clement v. City of Glendale, the Ninth Circuit granted summary judgment in favor of defendant -- a towing company -- as to the plaintiff's § 1983 claim because the defendant "did its best to follow the law" in that "the tow was authorized by the police department, conducted under close police supervision and appeared to be permissible under both local ordinance and state law." 518 F.3d 1090, 1097 (9th Cir. 2008). Since Clement, "[t]he threshold question of whether the good faith defense is available to private parties in § 1983 actions has been answered affirmatively by the Ninth Circuit." Cook v. Brown, 364 F. Supp. 3d 1184, 1190 (D. Or.

2019).

    B.  Application of Good-Faith Defense

        1.  Legal Standard

Plaintiffs construct a five-element good-faith test out of the Ninth Circuit's decision in Clement to argue that defendant's actions do not qualify for the defense. No court, however, has read Clement so rigidly. "[T]he [good faith] defense has been applied by the Ninth Circuit without a precise articulation of its contour." Cook v. Brown, 364 F. Supp. 3d 1184, 1192 (D. Or. 2019); see also Carey v. Inslee, 364 F. Supp. 3d 1220, 1228-29 (W.D. Wash. 2019) ("The Ninth Circuit has thus far expressed no position regarding the proper standard."). Courts instead apply "traditional principles of equity and fairness." Cook, 364 F. Supp. 3d at 1192. Because union defendants relied on 40-year precedent, and because unions cannot retract the bargaining they carried out on plaintiffs' behalf, district courts have concluded that requiring the unions to refund the collected fees would be inequitable. See, e.g., Babb, 378 F. Supp. 3d at 876; Cook, 364 F. Supp. 3d at 1192; Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019).

In the fair share fee context, "every district court to consider whether unions that collected agency fees prior to Janus have a good-faith defense to § 1983 liability have answered in the affirmative." Babb v. California Teachers Ass'n, 378 F. Supp. 3d 857, 872 (C.D. Cal. 2019) (collecting cases). Most recently, this court found that, because unions enjoyed Supreme Court and statutory authorization, the unions that followed then-

6

valid law were "entitled to the good-faith defense as a matter of law." Hernandez v. AFSCME California, 2019 WL 2546195, at *2 (E.D. Cal. June 20, 2019).

Although courts have not articulated a standard to evaluate good faith after Janus, the district courts that have considered the issue have found good faith where the union complied with then-existing Supreme Court precedent and state law. See, e.g., Babb, 378 F. Supp. 3d at 876 (finding good faith where union defendant relied "on a presumptively valid state statute" and "the 40-year-precedent of Abood"); Danielson v. Am. Fed'n of State, Cty., & Mun. Employees, Council 28, AFL-CIO, 340 F. Supp. 3d 1083, 1086 (finding good faith where "the Union Defendant followed the then-applicable laws"); Cook, 364 F. Supp. 3d at 1192 (finding that "[i]t would be highly inequitable to hold [the union defendant] retroactively liable" where the union collected fees in accordance with state law and Supreme Court precedent); Crockett, 367 F. Supp. 3d 996, 1006 (same).

Moreover, the limited circuit-level guidance available concludes that a union's compliance with previously valid law suffices to grant a good faith defense to § 1983 liability. In Jarvis v. Cuomo, 660 F. App'x 72, (2d Cir. 2016), the Second Circuit considered a union's § 1983 liability for fair share fees collected before the Supreme Court ruled in Harris v. Quinn, 573 U.S. 616 (2014), that unions may not compel personal care providers to pay fair share fees. The Jarvis court found that the union was "not liable for damages stemming from the pre-Harris collection of fair share fees," because the union "relied

7

on a validly enacted state law and the controlling weight of Supreme Court precedent," such that "it was objectively reasonable for [the union] 'to act on the basis of a statute not yet held invalid.'" Jarvis v. Cuomo, 660 F. App'x 72, 76 (2d Cir. 2016) (citing Pinksy v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996)).

This court previously "express[ed] skepticism that the good faith defense depends on more than the union's actual compliance with then-existing law." Hamidi v. Serv. Employees Int'l Union Local 1000, 386 F. Supp. 3d 1289, 1300 (E.D. Cal. 2019). Today, in reliance on the guidance above, this court makes the standard clear: in the agency fee context, a union's compliance with then-existing law indeed suffices to find good faith.

2. Application to Local 1000's Opt-Out System

Local 1000 is entitled to the good-faith defense because its opt-out system complied with then-valid Supreme Court precedent. Prior to Janus, this court specifically found that Local 1000's opt-out procedure was consistent with both Ninth Circuit and Supreme Court decisions on agency fee collection. (Feb. 8, 2017 Order at 14, 18 (Docket No. 94).) When plaintiffs filed suit, it was well established that unions may require nonmembers to pay the portion of the fair share fees that are used to fund expenditures germane to collective bargaining. Abood, 431 U.S. at 235. Further, this court found that the Ninth Circuit's finding in Mitchell v. Los Angeles Unified Sch. Dist., namely "that the Constitution does not mandate a system under

8

which nonmembers . . . 'opt in,'" 963 F.2d 258, 260 (9th Cir. 1992), was consistent with Supreme Court jurisprudence and was therefore the controlling law in the circuit. (See Feb. 8, 2017 Order at 12-13 (Docket No. 94).) Defendants "are entitled to rely" upon the Supreme Court's binding precedent and Local 1000 did so here. See Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980, 983 (N.D. Ohio 2019).

Local 1000 also complied with then-valid state law. The Dills Act ("the Act") expressly permitted the collection of fair share fees. See Cal. Gov't Code § 3513(k). Specifically, the Act permitted Local 1000 to establish procedures for a nonmember employee to object to paying the full fair share fee. Cal. Gov't Code § 3515.8. Moreover, the Public Employment Relations Board issued a regulation requiring exclusive representatives like Local 1000 to "provide an annual written notice to each nonmember who will be required to pay an agency fee" that includes "procedures for . . . objecting to the payment of an agency fee amount that includes nonchargeable expenditures." 8 C.C.R. § 32992. Both Supreme Court precedent and then-valid state law authorized Local 1000 to require nonmembers to opt out of payment of non-chargeable fees. Local 1000's compliance with then-valid law therefore entitles defendant to a good-faith defense as a matter of law.

### 3. Local 1000's Subjective Belief

Plaintiffs contend that defendant did not in fact act in good faith because they should have known that the Court would overturn Abood. Plaintiffs are correct that "unions have been on

9

notice for years regarding [the] Court's misgivings about Abood." Janus, 138 S. Ct. at 2484. But "reading the tea leaves of Supreme Court dicta has never been a precondition to good faith reliance on governing law." Cook, 364 F. Supp. 3d at 1192. To find otherwise would force defendants to engage in "constitutional gambling" and "decid[e] if they truly agree with the Supreme Court's reasoning to avoid future liability." Carey, 364 F. Supp. 3d at 1231.

More importantly, evaluating defendant's October Term predictions in a good-faith determination would "imperil the rule of law." Cook, 364 F. Supp. 3d at 1193. Unions that followed what was then the law -- Abood -- would not be entitled to the defense, while those that questioned the Supreme Court's binding interpretation of the Constitution would walk away unscathed. See also Danielson, 340 F. Supp. 3d at 1086 (concluding that consideration of a union's "subjective anticipation of an unpredictable shift in the law undermines the importance of observing existing precedent"). Defendant need not engage in telepathy to avail itself of the good faith defense to § 1983 liability. See Winner v. Rauner, No. 15-cv-7213, 2016 WL 7374258, at *5 (N.D. Ill. 2016). Instead, as stated above, Local 1000's compliance with what was then the law is sufficient for a finding of good faith.

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Docket No. 148) be, and the same hereby is, GRANTED.[2]

---

[2] The court's ruling here resolves plaintiffs' "sole

10

Dated: October 24, 2019

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

remaining claim." (Joint Status Report at 1 (Docket No. 143).) Defendant's motion to decertify the class and plaintiffs' motion to amend the class certification order are therefore moot.